SEWARD COUNTY RURAL FIRE PROTECTION DISTRICT, APPELLEE, v. THE COUNTY OF SEWARD, NEBRASKA, ET AL., APPELLANTS.

56 N. W. 2d 700

Filed January 23, 1953. No. 33256.

*Clarence S. Beck,* Attorney General, *Homer L. Kyle, Russell A. Souchek,* and *John D. Zeilinger,* for appellants.

*McKillip, Barth & Blevens,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is a declaratory judgment action brought to determine the legality of the existence of the plaintiff, a rural fire protection district, and to determine the legality of the annexation of territory to the plaintiff district, as originally organized. The defendants are the Counties of Seward and York and certain of the officers of those counties and the Attorney General.

Issues were made, a trial had, and a decree entered sustaining the legality of the proceedings involved. Defendants appeal, challenging the judgment in certain particulars. We determine the assignments made and argued, and affirm the judgment of the trial court.

As originally organized the territory of the Seward

County Rural Fire Protection District was entirely within the County of Seward. In 1951 proceedings were begun and carried to completion to annex thereto certain lands adjacent to the district but entirely within York County. The legality of the annexation procedures is involved in this appeal.

The statutes involved and which require construction are, in the order of their consideration, sections 35-514 and 35-504, R. R. S. 1943.

In Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289, we stated certain rules to be followed in the construction of statutes where we are required to determine the legislative intent:

" 'In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject-matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.' 59 C. J. 993.

"All parts of an act relating to the same subject should be considered together and not each by itself.

" 'A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears.' 2 Lewis' Sutherland, Statutory Construction (2d ed.) 758, sec. 399."

The petitions here were signed by electors residing within the boundaries of the territory proposed to be annexed to the existing district. Defendants contend that the statute requires that the petitions must come from the electors of the existing district and ultimately contend that petitions must come from both the existing district and the territory proposed to be annexed. The sufficiency of the petitions otherwise is not questioned.

The first four sentences of section 35-514, R. R. S. 1943, are: "(1) Any territory which is equivalent in area to six sections or more and which is outside the limits of any incorporated city, village, or rural fire pro-

tection district and which is adjacent to the boundary of an existing rural fire protection district may be annexed to such district in the manner hereinafter provided. (2) Such proceedings may be initiated by the presentation to the county clerk of a petition signed by sixty per cent or more of the electors who are owners of any interest in real or personal property assessed for taxation in the district and who are residing within the boundaries of such territory stating the desires and purposes of such petitioners. (3) The petition shall contain a description of the boundaries of the territory proposed to be annexed and shall be accompanied by a map or plat, and a deposit for publication costs. (4) The county clerk shall consult the tax schedules in the office ·of the county assessor and shall determine and certify that said petition has been signed by at least sixty per cent of the electors who are owners of any interest in real or personal property assessed for taxation in the district and who appear to reside within the boundaries described by such petition." Numerals in parentheses above are supplied by us.

·It is noted that in the first sentence the Legislature used the word "territory" with reference to the area proposed to be annexed. It used the words "existing * * * district" with reference to the "district" to which the annexation is proposed. In the second sentence it calls for petitions by electors who are owners of property assessed for taxation "in the district and who are residing within the boundaries of such territory." It is defendants' contention that the words "in the district" mean the existing district. Of necessity it would follow that the word "territory" means "existing district." Obviously the word "territory" was not so used in the first sentence, but is there used with reference to the "area" to "be annexed." Defendants contend that the trial court construed the word territory as synonymous with district and construed district to mean territory to be annexed, and says the trial court erred in doing so.

Defendants do the same thing in reverse and in effect construe "territory" to mean "existing district." It is a construction not in accord with its use in the first sentence. Such a construction would lead to the conclusion that the only petition required for annexation would come from the existing district which is an improbable legislative intent, as it would enable an existing district to at least initiate the annexation of "territory" without any action of the electors in the territory to be annexed. It also is to be noted that the third sentence calls for a petition containing a description of "the boundaries of the territory proposed to be annexed" and the fourth sentence requires a determination that the petitioners own property "in the district" and who reside "within the boundaries" described in the petition. It is obvious that to meet these requirements the petition must be signed by electors residing in the territory proposed to be annexed and just as obvious that electors residing in the existing district could not meet that requirement.

As pointed out defendants contend that there must be petitions from both the annexing territory and the existing district. There is nothing in the language of the act which suggests a requirement of petitions from both, the "territory" proposed to be annexed and the "existing district."

The fifth, sixth, seventh, and eighth sentences of the section provide: "(5) Thereafter, the county clerk shall forward such petition, map or plat, and certificate to the board of directors of the district concerned. (6) Within thirty days thereafter, such board of directors shall transmit said petition to the proper county board accompanied by a report in writing approving or disapproving the proposal contained in said petition, or approving such proposal in part and disapproving it in part. (7) If the report of the board of directors disapproves the proposal, the petition shall be rejected. (8) If the report of the board of directors is favorable

to such proposal, either in whole or in part, the county board shall promptly designate a time and place for a hearing upon the petition and shall give notice thereof in the manner prescribed by section 35-504." Numerals in parentheses above are supplied by us.

The proviso to the last sentence of the section is: "*Provided*, that no area shall be annexed to an existing rural fire protection district contrary to the recommendation of the board of directors of such existing district."

To accept defendants' construction of the section would be to hold that the Legislature intended to give the board of directors of the existing district power to disapprove and cause to be rejected the petition of 60 percent of the qualified electors of the existing district. We find nothing in the act to justify such a construction. It is patent that these provisions were placed in the statute for the purpose of giving an adequate means for the existing district to speak and control the result of the annexation proceedings.

It is also to be noted that elsewhere in the act the Legislature used the words "proposed district." §§ 35-503 and 35-504, R. R. S. 1943. In section 35-506, R. R. S. 1943, it used the words "in the district" and "within the boundaries of the district" when referring to a district not completely organized. The statute as a whole does not demonstrate that the word "district" was used as meaning a fully organized and existing district in all instances. We conclude that the petition referred to in section 35-514, R. R. S. 1943, requires the signatures only of the required number of qualified electors in the territory proposed to be annexed to an existing rural fire protection district.

The second assignment of error raises the question of where the notice shall be published which is provided by the eighth sentence above quoted. Here the notice was published in York County. The defendants contend that the statute requires that it shall be published in a newspaper of general circulation in the county

where the existing rural fire protection district is organized—which here means in Seward County.

Section 35-504, R. R. S. 1943, provides: "(1) Upon the filing of such petition in the office of the county clerk, the county clerk shall determine and certify that such petition has been signed by at least sixty per cent of the freeholders whose names appear on the current tax schedules in the office of the county assessor and who appear to reside within the suggested boundaries of the proposed district. (2) He shall thereafter designate a time and place for said petition to be heard by the county board. (3) Notice of such hearing shall be given by publication two weeks in a newspaper of general circulation in the county, the last publication appearing at least seven days prior to said hearing; said notice shall be addressed to 'all persons residing in or having any interest in real or personal property located within the following boundaries' and shall include a statement of the proposed boundaries as set forth in the petition; *Provided,* that if the proposed district shall be situated within two or more counties, the county clerk of the county wherein the largest number of petitioners shall have signed, shall confer with the clerk or clerks of the other county or counties concerned and shall obtain a certificate as to the adequacy of the petitions pertaining to said county or counties, and thereafter he shall designate a time and place for a hearing before a joint meeting of the county boards of all counties in which the proposed district is to be situated and shall give notice thereof by publication in the manner hereinbefore provided. (4) At the time and place so fixed, the county board or boards shall meet, and all persons residing in or owning taxable property within, the proposed district shall have an opportunity to be heard respecting the formation of such district or the location of the boundaries thereof. (5) Thereupon the county board or boards shall determine whether the proposed district is suited to the general fire protection policy of the

county, or each of such counties, as a whole, determine the boundaries of the proposed district, whether as suggested in the petition or otherwise, and make a written order of such determination which shall describe the boundaries of the district and be filed in the office of the county clerk or clerks of each county in which such district is situated." Numerals in parentheses are supplied by us.

The above part following the *"Provided"* obviously relates to the notice to be given where a district is being organized in two or more counties and provides for notices depending on the fact situation presented. The question here is what notice the Legislature required to be given where an existing district was all in one county and the territory proposed to be annexed was all in an adjacent county.

Defendants contend that to approve the notice here given as sufficient is to approve a legislative intent that ex parte proceedings may be had without notice to or participation in the proceedings by the county clerk or county board of Seward County.

Obviously section 35-514, R. R. S. 1943, contemplates that an annexation proceeding may be pending in one county involving an existing district in another. The second sentence of section 35-514, R. R. S. 1943, above quoted, contemplates that the petition is to be presented to the county clerk of the county where the territory to be annexed is situated. The provision of the fourth sentence of section 35-514, R. R. S. 1943, quoted above, indicates that it is that county clerk who is to consult the tax schedules in the office of the assessor of that county, for the information required would be found in the records of that county.

It is likewise apparent that the language "directors shall transmit said petition to the proper county board" in the sixth sentence of section 35-514, R. R. S. 1943, above quoted, recognizes that the "proper county board" may be one other than the county board of the county

in which the existing district is organized. The statute, section 35-514, R. R. S. 1943, requires notice to the board of directors of the existing district in the procedural steps to be followed prior to the published notice. The statute then requires published notice to "* * * 'all persons residing in or having any interest in real or personal property located within the following boundaries' and shall include a statement of the proposed boundaries as set forth in the petition * * *." Third sentence, § 35-504, R. R. S. 1943. Here the "proposed boundaries" are of land in York County, where the required notice was given.

Accordingly, we hold that where the boundaries of an existing rural fire protection district comprise land all within one county and the boundaries of territory proposed to be annexed thereto comprise land all within an adjacent county the notice required by section 35-514, R. R. S. 1943, need be published only in a newspaper of general circulation in the county where the land proposed to be annexed is situated.

In reaching this conclusion we are not unmindful of the provision in the ninth sentence of section 35-514, R. R. S. 1943: "At such hearing, any person owning taxable property or residing within the boundaries of the existing district or within the boundaries of the territory to be annexed, shall have the opportunity to be heard respecting the proposed annexation." We think that the Legislature intended that notice to the board of directors of an existing rural fire protection district of a petition proposing annexation of territory was notice to persons owning property and residing within the boundaries of the existing district.

Defendants' next contention is that the statute requires that the hearing be held before the county board of York and Seward Counties in joint meeting and that the proposed annexation be approved by joint action of the two boards. Here the hearing was before the York County board and approval made by it alone.

The defendants rely on the proviso in the latter part of section 35-504, R. R. S. 1943. This provision directly relates to the organization of districts where the proposed district is situated within two or more counties.

Following the reasoning heretofore set out we hold that where the boundaries of an existing rural fire protection district comprise land all within one county and the boundaries of territory proposed to be annexed thereto comprise land all within an adjacent county, the proper county board to hold a hearing upon a petition for annexation and to determine the questions presented by the petition is the county board of the county where the land proposed to be annexed is situated.

Defendants contend that so construed the act is violative of the constitutional provision that: "No person shall be deprived of life, liberty, or property, without due process of law." Art. I, § 3, Constitution of Nebraska.

Defendants argue that it permits the residents and county authorities of York County to impose legal obligations and additional taxes on the members of the plaintiff district, without their consent and without notice or adequate and reasonable opportunity to be heard.

The question here presented is answered in our decision in Rowe v. Ray, 120 Neb. 118, 231 N. W. 689, 70 A. L. R. 1056. We there held: "* * * the formation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, and the fixing of the boundaries of such municipal corporations are legislative functions." In discussing applications of the rule we said: "It may and does authorize one city to annex an adjacent suburb or village upon a majority vote of the electors thereof, and by the consent of the municipal authorities of the larger city. In all such cases the legislative function has been performed. The legislature, in those cases, has fixed the terms and conditions on which an electorate, which is definite and certain, may

determine whether the act of the legislature shall become operative."

Here the Legislature required a petition of 60 percent of the electors instead of a majority vote of the electors; here it required the consent of the board of directors of the rural fire protection district. Applying the rule here we hold that the Legislature has the power to authorize the annexation to an existing rural fire protection district of territory adjacent thereto, upon the petition of 60 percent of the electors qualified as required in section 35-514, R. R. S. 1943, and by the consent of the board of directors of the existing district, the other requirements of the act having been complied with. For a general discussion of this subject, see, 1 Dillon, Municipal Corporations (5th ed.), § 355, p. 617; 2 McQuillin, Municipal Corporations (3d ed.), C. 7, p. 254; 62 C. J. S., Municipal Corporations, § 43, p. 123, and following; 37 Am. Jur., Municipal Corporations, § 23, p. 639, and following.

There is no showing in this record of any increased tax burdens on the existing district. We put that aside and assume that it is a contention of the possibility of that result and assume also that these defendants have the right to raise the question that there is a violation of the due process provision of Article I, section 3, of the Constitution of Nebraska. That contention is answered in Hunter v. City of Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151. There the court considered a contention that a consolidation of two cities would subject property to the burden of additional taxation and deprive owners of property without due process of law. The court held: "Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. * * * The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.

Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

We see no merit in the assignment.

The decree of the district court is affirmed.

AFFIRMED.