STATE OF NEBRASKA, APPELLANT, V. LARRY RONALD HAMILTON, APPELLEE.

340 N.W.2d 397

Filed November 18, 1983. No. 82-846.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellant.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Krivosha, C.J.

The State comes to this court on a proceeding brought by the Douglas County attorney pursuant to the provisions of Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 1982), and seeks to have this court determine that Neb. Rev. Stat. § 28-311 (Reissue 1979) is constitutional. The trial court found the statute in question to be unconstitutionally vague and therefore unenforceable. Our examination of the statute in light of relevant law convinces us that the trial court was correct in its determination, and for that reason the judgment of the trial court in declaring § 28-311 unconstitutional must be affirmed.

The statute in question intends to make it a crime for someone to make terroristic threats, providing as follows: "(1) A person commits terroristic threats if:

"(a) He threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person . . . ."

In order for any criminal statute to pass constitutional muster, it must satisfy certain basic inherent requirements. Those requirements were set out in *State v. Huffman*, 202 Neb. 434, 435-36, 275 N.W.2d 838, 839-40 (1979), wherein we said: "A crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. State v. Nelson, 168 Neb. 394, 95 N.W.2d 678; Heywood v. Brainard, 181 Neb. 294, 147 N.W.2d 772. The dividing line between what is lawful and unlawful cannot be left to conjecture. State v. Adams, *supra*; State v. Nelson, *supra*. The citizen cannot be held to answer

charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things and providing a punishment for their violation should not admit of such a double meaning that the citizen may act upon one conception of its requirements and the courts upon another. State, ex rel. English v. Ruback, 135 Neb. 335, 281 N.W. 607; Connally v. General Construction Co., 269 U.S. 385, 46 S. Ct. 126, 70 L. Ed. 322. A statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning, and differ as to its application, violates the first essential element of due process of law. [Citations omitted.]'' See, also, *State v. Metzger*, 211 Neb. 593, 319 N.W.2d 459 (1982); *State v. Adkins*, 196 Neb. 76, 241 N.W.2d 655 (1976).

The elements of the crime involved herein appear to be (1) the actor must *threaten* to commit a crime, and (2) the crime must be *likely* to result in death or *serious physical injury* to another person, or (3) the crime must be *likely* to result in *substantial property damage* to another *person*. Setting aside for the moment the obvious difficulty of understanding how one may commit a crime likely to result in substantial property damage to another person, we find that the first two requirements of the act are so vague as to violate the standards previously announced. In *State v. Adkins, supra* at 82, 241 N.W.2d at 658-59, we said: " ' "The test to determine whether a statute defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences,

thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts. (Citing case.) (2) The dividing line between what is lawful and what is unlawful cannot be left to conjecture.'' ' ''

As noted by the trial court, the statute in question is vague and uncertain as to what constitutes a threat. The act does not define the term, nor does it describe how or to whom, if anyone, the threat must be made. Must the threat be made in seriousness, or will a simple joke be sufficient? Is it a violation of this act to make the threat if the threat is neither heard nor received by the anticipated victim, or does a violation occur only if there is knowledge and understanding by the party to whom it is directed? That is to say, can one violate this act by calling another and threatening to commit a crime likely to result in serious physical injury, only to discover that he has dialed the wrong number? And is it a violation if the person to whom the threat is made does not consider it to have been made seriously and gives it no heed?

Another difficult problem with the statute is that the crime threatened must be such that it can be established by proof beyond a reasonable doubt that the crime is, in fact, *likely* to cause serious physical injury to another. We have discussed previously the problems inherent in using the word ''likely'' in a criminal statute. In *State v. Huffman, supra* at 437, 275 N.W.2d at 840, we said: ''The determination as to whether the particular driving was, in fact, in a manner 'likely' to endanger may in some instances be ascertainable only after the fact. The standard announced in the statute fails to describe a crime and the elements constituting the crime in a clear, prospective manner as required by our criminal law. There appears within the statute no ascertainable standard by which men of common intelligence can determine what is unlawful. Under the provisions of the act as it now stands, no injury need oc-

cur. The test is only to determine if, in fact, one operated an automobile in such a manner 'likely' to endanger. In certain instances that may only be ascertainable after the fact and based upon speculation and conjecture. To permit the doing of an act without violation of the statute if performed by an experienced driver, while making the same act unlawful if performed by a novice driver, is far too vague and indefinite to withstand constitutional attack.''

How does one threaten to commit a crime which is likely to (that is to say, may possibly) result in serious physical injury? Is this act violated if one who is but 5 feet 2 inches and weighs 100 pounds threatens to punch another who is 6 feet 7 inches and weighs 350 pounds? Is a criminal statute sufficiently definite if, in order to determine whether the particular act threatened is a violation of the statute, one must consider the physical characteristics of the parties involved, and speculate as to whether the actor could in fact cause serious bodily injury to the proposed victim? We think not.

The State, in its brief, argues that the act in question is modeled after the Model Penal Code and that, while certain words are omitted, the omitted words should nevertheless be read into the statute by the court. We believe this suggestion is without merit. The act in question, while similar in purpose to the Model Penal Code, is a significant departure from the code. Model Penal Code § 211.3 at 539 (1974) provides: ''A person is guilty of a felony of the third degree if he threatens to commit any crime of violence *with purpose to terrorize another* . . . .'' (Emphasis supplied.) The language of the Model Penal Code is certainly much clearer than that adopted by the Nebraska Legislature. An actor violates the Model Penal Code when he or she threatens to commit any crime of violence, with the intent to terrorize another, regardless of what the outcome of the act will be or of how the victim receives the

threat. The Model Penal Code seems to be fairly definite, and not speculative as is the statute in question.

Likewise, the suggestion that we merely insert missing words is of no benefit. It is not for courts to supply missing words and even sentences in order to make definite that which is indefinite. This is not the role or function of a court. In *Bessey v. Board of Educational Lands & Funds*, 185 Neb. 801, 804, 178 N.W.2d 794, 797 (1970), we said: "A court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes and this is particularly true where it appears, as here, that the matter was intentionally omitted." By rejecting the language of the Model Penal Code and opting instead for the language in question, we must assume the Legislature intended to omit the words that the State now urges us to supply.

The purposes underlying the adoption of § 28-311 are meritorious ones which a society should seek to obtain for its citizens. Undoubtedly, this is why the Model Penal Code was drafted, and in many states adopted. But good intentions cannot be substituted for constitutional requirements. The effort of the Legislature in departing from the Model Penal Code, for whatever reason, resulted in adopting a statute which is simply too vague to be valid. For these reasons we believe that the decision of the trial court finding § 28-311 unconstitutionally vague must be affirmed.

AFFIRMED.