STATE OF NEBRASKA, APPELLEE, V. KEVIN R. GROVES, APPELLANT.
363 N.W.2d 507

Filed March 1, 1985.   No. 84-282.

Michael T. Levy of Levy & Lazer, P.C., for appellant.

Herbert M. Fitle, Omaha City Attorney, Gary P. Bucchino, Omaha City Prosecutor, Richard M. Jones, and David F. Smalheiser, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Appellant, Kevin R. Groves, was convicted after trial in the municipal court of the city of Omaha, Douglas County, Nebraska, of the offense of disorderly conduct as defined by Omaha Mun. Code § 20-42 (1980). The district court for Douglas County affirmed the conviction but modified the sentence of the municipal court from 75 to 20 days. He appeals to this court.

Two assignments of error are advanced, which may be summarized as follows. Section 20-42 is unconstitutional because it is overbroad in that it applies to protected conduct under the Constitution of the United States and the Constitution of the State of Nebraska, and this section is vague in that it fails to give fair and adequate notice of the type of conduct prohibited and is susceptible to arbitrary enforcement. We shall consider the assignments together. A brief recitation of the facts is necessary.

On October 5, 1983, Edward Hale, a police officer of the city of Omaha, was working as a private security guard at the Holiday Inn motel complex at 3321 South 72d Street, Omaha, Nebraska. The complex consists of a number of buildings and a large 14-acre parking lot. Officer Hale's employment included

patrolling the parking lot in a truck to provide security for vehicles parked there. At about 3:40 a.m. Officer Hale observed the appellant, Groves, in the far east part of a parking lot, standing next to a Cadillac automobile. The parking lot was located approximately 200 feet from the nearest building. Officer Hale approached Groves, who was about 100 feet from him. As the officer neared Groves, he observed what appeared to be a pair of boltcutters in his right rear pocket. When Officer Hale pulled within 10 feet of Groves, Groves started to walk away. Officer Hale identified himself as a police officer, produced his badge, and showed it to Groves. Groves' response was, "What the fuck do you want?" Officer Hale responded that he wished to see his identification. Groves reached into his pocket, got out his driver's license, gave it to the police officer, and advanced toward Officer Hale in what Hale described as a menacing manner. Groves' words at that time were, "I don't give a fuck, give a fuck who you are." In response, Officer Hale produced his revolver and pointed it at Groves. Groves then started walking to his own automobile about 40 feet from where the Cadillac was parked. Officer Hale summoned assistance from the Omaha Police Department and, approximately 8 minutes later, several cruisers responded.

Before assistance arrived, appellant stepped inside his car, backed it out, and parked it near where Officer Hale's truck was stopped. Groves came out of his car, aware that Officer Hale had called for assistance, and called Officer Hale a "motherfucker" and a "pig" and requested the officer to try to arrest him singlehandedly. At the time of this confrontation Officer Hale observed a sheath on the defendant's hip, partially concealed beneath his coat. Officer Hale recognized the sheath as one that typically contained a "Buck knife." When additional police officers arrived, Groves called one of the summoned officers a "fuckhead," and a struggle ensued with the officer before Groves was forcibly handcuffed and arrested. The boltcutters observed by Officer Hale were recovered from under the front seat of Groves' car.

Section 20-42 of the Omaha Municipal Code provides as follows: "It shall be unlawful for any person purposely or knowingly to cause inconvenience, annoyance or alarm or

create the risk thereof to any person by: (a) Engaging in fighting, threatening or violent conduct; or (b) Using abusive, threatening or other fighting language or gestures; or (c) Making unreasonable noise." We shall address the vagueness and overbreadth arguments together.

Recently, in *State v. Frey*, 218 Neb. 558, 357 N.W.2d 216 (1984), we had occasion to consider the constitutionality of Neb. Rev. Stat. § 28-305(1) (Reissue 1979) with respect to a manslaughter charge. We said in that case at 561-62, 357 N.W.2d at 219:

> *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982), teaches that in a facial challenge to the overbreadth and vagueness of a law, that is, in this context, a claim that the law is invalid in toto and therefore incapable of any valid application, our first task is to determine whether the enactment reaches a substantial amount of consti-tutionally protected conduct. If it does not, then the overbreadth challenge must fail. We are to then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, uphold the challenge only if the enactment is impermissibly vague in all its applications. In order to have standing to challenge a vague statute, one must not have engaged in conduct which is clearly proscribed by the statute, and cannot complain of the vagueness of the law as applied to the conduct of others.

Therefore, applying the language of *State v. Frey* to this case, our first question, then, is whether or not the enactment reaches a substantial amount of constitutionally protected conduct. It does not. As we observed in *State v. Boss*, 195 Neb. 467, 471, 238 N.W.2d 639, 643 (1976):

> The word abuse and similarly broad terms in like statutes have been held to pass constitutional muster under the First Amendment to the Constitution of the United States only if they are construed so as to apply the statute to punish only what have been called "fighting words." Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031. . . . " '[F]ighting' words [are] 'those

which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' "

We hold that the words "fuckhead" and "motherfucker" are such fighting words, and we again specifically reject the implicit argument advanced by appellant that a police officer is somehow less susceptible to abuse than other members of the general public. As we said in *Boss*:

> We specifically reject the authority of Williams v. District of Columbia, 419 F.2d 638, and the concurrence of Mr. Justice Powell in Lewis v. City of New Orleans, *supra*, wherein it is suggested that the words here used cannot be fighting words when directed to a police officer because he is trained to accept such abuse without violent reaction.

*Id.*

As Groves' conduct is not constitutionally protected, the overbreadth argument must be rejected. We are, then, now to conclude whether or not the ordinance is vague. Section 20-42(c) is constitutionally suspect. We are again faced with the defendant's lack of standing to attack this record. We have said, to repeat the words in *State v. Frey, supra* at 561-62, 357 N.W.2d at 219: "In order to have standing to challenge a vague statute, one must not have engaged in conduct which is clearly proscribed by the statute, and cannot complain of the vagueness of the law as applied to the conduct of others." As the ordinance clearly applied to prohibited conduct engaged in by Groves, he lacks standing to suggest that the ordinance may be impermissibly applied to others. The assignments of error are without merit. The judgment and sentence of the trial court are affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority opinion in this case. I do so on three specific grounds. First, I believe that the majority opinion is in error in its declaration that in order for one to maintain a facial challenge to the overbreadth and vagueness of a law where the enactment does not reach a substantial amount of constitutionally protected conduct, the challenge can be upheld only if the enactment is impermissibly

vague in *all* of its applications. Second, I believe that the language of the statute is impermissibly vague, and therefore unconstitutional. Third, I believe that the facts of the case fail to establish that the defendant committed the crime for which he was charged and convicted.

I turn first to the question of when a facial challenge as to overbreadth or vagueness can be maintained. I am afraid that just as the U.S. Supreme Court got onto a wrong track when it decided the case of *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982), so too did this court get onto the wrong track when we recently decided the case of *State v. Frey*, 218 Neb. 558, 357 N.W.2d 216 (1984). The majority opinion in the instant case continues along that wrong trail.

In *Frey*, relying upon what we perceived to be the position of the U.S. Supreme Court in *Hoffman Estates*, we held that Frey lacked standing to challenge the constitutionality of the statute in question, because in order for one to have standing to challenge a vague statute, one must not have engaged in conduct which is clearly proscribed by the statute, and cannot complain of the vagueness of the law as applied to the conduct of others unless the statute is impermissibly vague in all its applications.

A closer examination of the opinion in *Hoffman Estates*, in light of a later decision of the U.S. Supreme Court, *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983), leads one to the inescapable conclusion that *Hoffman Estates* does not stand for such a rule and, in any event, does not reflect the law in this jurisdiction.

First, *Hoffman Estates* involved a preenforcement facial challenge of a civil statute seeking to regulate an economic matter. As observed by the majority in *Hoffman Estates, supra* at 498-99:

>These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often

more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

This ordinance simply regulates business behavior and contains a scienter requirement with respect to the alternative "marketed for use" standard. The ordinance nominally imposes only civil penalties.

Any other reference in the *Hoffman Estates* opinion to criminal action and the standards required in such criminal actions is mere dicta.

The majority opinion in *Hoffman Estates, supra* at 497, said:

A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications.

No authority was cited for that proposition other than *Hoffman Estates* itself. Furthermore, this passage must be read in light of the Court's specific acknowledgment that commercial regulation is subject to a relaxed vagueness analysis. As noted earlier, even the *Hoffman Estates* opinion recognizes that legislation interfering with first amendment

interests is examined under "a more stringent vagueness test."

Apparently, the U.S. Supreme Court has recognized the error of *Hoffman Estates* and has already abandoned its teachings. We should do likewise. In *Kolender v. Lawson, supra*, the U.S. Supreme Court was asked to pass upon the constitutionality of a California penal statute which provided:

> Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor: . . . (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

See Cal. Penal Code § 647(e) (West 1970). The petitioner was detained or arrested on approximately 15 occasions, though he was only prosecuted twice and convicted once. He then brought a civil action seeking a declaratory judgment that § 647(e) is unconstitutional. Neither the facts as presented to the U.S. Supreme Court nor the statute itself is such that it would be vague in all of its applications. Obviously, one who had just committed a crime and was wandering about the street without apparent reason might be asked to identify himself and to account for his presence. Nevertheless, the U.S. Supreme Court struck the statute down as being unconstitutionally vague. In doing so the Court said:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations omitted.] Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement."

*Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). In n.8 to the opinion the Court addressed the *Hoffman Estates* opinion, saying at 358-59:

> In his dissent, JUSTICE WHITE claims that "[t]he upshot of our cases . . . is that whether or not a statute purports to regulate constitutionally protected conduct, it should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications." [Citation omitted.] The description of our holdings is inaccurate in several respects. First, it neglects the fact that we permit a facial challenge if a law reaches "a substantial amount of constitutionally protected conduct." [Citation omitted.] Second, where a statute imposes criminal penalties, the standard of certainty is higher. [Citation omitted.] This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have some valid application. See, *e.g., Colautti v. Franklin*, 439 U.S. 379, 394-401 (1979); *Lanzetta v. New Jersey*, 306 U.S. 451 (1939). The dissent concedes that "the overbreadth doctrine permits facial challenge of a law that reaches a substantial amount of conduct protected by the First Amendment . . . ." [Citation omitted.] However, in the dissent's view, one may not "confuse vagueness and overbreadth by attacking the enactment as being vague as applied to conduct other than his own." [Citation omitted.] But we have traditionally viewed vagueness and overbreadth as logically related and similar doctrines. See, *e.g., Keyishian v. Board of Regents*, 385 U.S. 589, 609 (1967); *NAACP v. Button*, 371 U.S. 415, 433 (1963). . . .

No authority cited by the dissent supports its argument about facial challenges in the arbitrary enforcement context. . . . *Hoffman Estates, supra*, also relied upon by the dissent, does not support its position. In addition to reaffirming the validity of facial challenges in situations where free speech or free association are affected [citation omitted], the Court emphasized that the ordinance in *Hoffman Estates* "simply regulates business

behavior" and that "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow." [Citation omitted.]

I am firmly convinced that should we continue to follow the trail mistakenly set out for us by the unsupported authority in *Hoffman Estates*, we shall wind up at a dead end and be compelled to find our own way back. We should abandon that trail now, concede that we were misled, and once again reestablish what has long been the rule, both in this jurisdiction and in the federal jurisdiction as well. See *State v. Hamilton*, 215 Neb. 694, 340 N.W.2d 397 (1983).

At least where the legislation arguably impinges on first amendment values, I believe the rule to be as expressed by the U.S. Supreme Court in *Gooding v. Wilson*, 405 U.S. 518, 521, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1971), wherein the Court said:

"Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute. The statute, in effect, is stricken down on its face. This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights."

See, also, *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974); *Plummer v. City of Columbus*, 414 U.S. 2, 94 S. Ct. 17, 38 L. Ed. 2d 3 (1973). All that one can say with regard to the decision in *Hoffman Estates* is that it is an anomaly in the law and, as an anomaly, should be disregarded.

I turn next to the question of whether the ordinance is unconstitutionally vague. As noted by the majority, and as conceded by the city of Omaha, unless this court is able to apply some valid judicial construction limiting the reach of the ordinance solely to constitutionally unprotected speech, we have no choice but to declare the ordinance invalid. I believe that the judicial gloss sought to be applied by the court simply does not adhere and therefore fails to make the test.

The majority has determined that the words "fuckhead" and "motherfucker" are fighting words per se. I believe that not to be the law. In *State v. Boss*, 195 Neb. 467, 472, 238 N.W.2d 639, 643 (1976), relied upon by the majority, we said "we agree that whether any particular use of abusive language constitutes 'fighting words,' depends not only upon the words, but upon the circumstances as well." I believe that under the facts of this case the use of those words could not have constituted fighting words, but I defer that for a moment. At this juncture I simply address the question of whether the ordinance is vague. In doing so we are reminded that " '[a] crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. . . .' " *State v. Hamilton, supra* at 695, 340 N.W.2d at 398. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things and providing a punishment for their violation should not permit such a double meaning that the citizen may act upon one conception of its requirements and the courts upon another. A statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application violates the first essential element of due process of law. In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), the U.S. Supreme Court referred to these principles in the following manner:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague

laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

See, also, *State v. Hamilton*, 215 Neb. 694, 340 N.W.2d 397 (1983).

An examination of the ordinance in question is a perfect example of what it was in *Hamilton* about which we were concerned. To begin with, this ordinance on its face not only makes it a crime to use fighting words but, likewise, makes it a crime to engage in a whole host of activities, including making unreasonable noise in such a manner as to cause inconvenience, annoyance, or alarm, or create the risk thereof to *any* person. If two individuals on the street, enjoying the fact that they have accomplished some task, make unreasonable noise, thereby causing annoyance to a third person, the ordinance has been violated. It is difficult to imagine how one could draft an ordinance more vague than the one under consideration. In *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971), the U.S. Supreme Court struck down an unlawful assembly statute prohibiting conduct "annoying to persons passing by." In doing so the U.S. Supreme Court said at 614:

Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning."

See, also, *Terminiello v. Chicago*, 337 U.S. 1, 69 S. Ct. 894, 93 L. Ed. 1131 (1949); *Gooding v. Wilson*, 405 U.S. 518, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1971).

The Alaska Supreme Court was called upon to examine a similar ordinance in *Marks v. City of Anchorage*, 500 P.2d 644

(Alaska 1972). In striking down the ordinance the court said at 652-53:

> When these fundamental and long-established principles of constitutional law are applied to the Anchorage ordinance, there is no escape from the conclusion that the ordinance is likewise void for vagueness. Since the prefatory language of the ordinance, containing the mens rea for the specifically enumerated prohibited acts, is itself impermissibly vague, no part of the ordinance can stand. The defective prefatory language is "with purpose and intent to cause public *inconvenience, annoyance* or *alarm* or recklessly create a risk thereof." (emphasis added). Coates v. Cincinnati, *supra*, specifically declared the word "annoying" to be unconstitutionally vague and the words "inconvenience" and "alarm" are not less so. The rest of the ordinance is also peppered with indefinite words . . . .
>
> In sum, not only does the ordinance fail to give adequate notice of what conduct is prohibited, but it is particularly subject to the abuse of uneven enforcement.

The majority seeks to avoid the difficulty presented to us by the ordinance by suggesting that even though some of the ordinance may be invalid, that portion of Omaha Mun. Code § 20-42(b) (1980) specifically referring to "fighting language" was sufficient to convict. The difficulty with all of that is that Groves was not charged with violating § 20-42(b) by using fighting language. He was charged with a violation of all three parts of § 20-42, and he was found guilty of violating all of § 20-42. We have no way of knowing whether he was found guilty by reason of the court finding that he had in fact used fighting words or simply because he was making unreasonable noise. See *Williams v. District of Columbia*, 419 F.2d 638 (D.C. App. 1968). It is not suggested by this dissent that there may not be a manner in which a constitutional ordinance might be drafted. It is, however, suggested that where the drafters have failed to perform their duties, this court should not undertake to do so.

The simple fact of the matter is that no reasonable person can know in advance what activity is truly prohibited by the

provisions of § 20-42. For that reason the ordinance must be declared unconstitutional.

The final reason I believe the majority opinion is in error is because I do not believe the evidence was sufficient to convict Groves of causing inconvenience, annoyance, or alarm by using fighting language.

It is difficult for me to conceive how an officer, with a drawn, loaded service revolver, who is being specifically paid by a private business to provide security of the type that the officer was providing at the moment the altercation occurred, could be either inconvenienced, annoyed, or alarmed by a man with a foul mouth. The only testimony in the record which even remotely establishes inconvenience, annoyance, or alarm on the part of the police officer is as follows:

Q. All right. Can you, rather than state a conclusion, "menacing," can you describe what sort of actions or what sort of posture he was in, words expressed to you as he approached you?

A. He says, "I don't give a fuck, give a fuck who you are." And he started towards me in a fashion I felt was menacing to me, to my own safety.

It was at this point that the officer drew his loaded revolver.

It is difficult to conclude that this evidence was sufficient to establish inconvenience, annoyance, or alarm of a man who is being paid to be inconvenienced, annoyed, or alarmed, and therefore permitted to carry a loaded revolver. That fact is further borne out when, on cross-examination, Officer Hale testified as follows:

Q. Officer Hale, how long have you been a police officer?

A. Twelve years.

Q. You've been called names before, haven't you. . .

A. Many times.

Q. In connection with your duties. . .

A. Yes.

Q. As a police officer? You've been called a motherfucker before, in connection with your duties as a police officer?

A. I have.

Q. It goes with the territory, doesn't it?

A. It does.

Furthermore, it is apparent from the testimony that the arrest occurred before the officer could, under any reasonable circumstance, be inconvenienced, annoyed, or alarmed, even if we knew what those terms meant. One of the arresting officers testified as follows:

Q. Do you recall any specific language that he used that led you to that conclusion, did you hear any abusive language or threatening language?

A. Yes, quite a bit of swearing in a rather loud tone.

Q. At who?

A. It wasn't directed intitially [sic] at any one in particular, just in a manner of conversation; however. . .

Q. What specific words were used?

A. He used the word fuck several times. I told the party to quiet down or he'd be placed under arrest for disorderly conduct.

Q. What was his response to that?

A. He said, "You're nothin' but a fuckhead."

Q. What happened next?

A. I said, "You're under arrest for disorderly conduct," placed him under arrest.

In effect, then, we have now made words expressed to no one in particular fighting words, thereby permitting an individual to be arrested. The officer had already determined that he was going to arrest Groves if he continued to make noise, whether he used fighting words directed at anyone or not.

No one condones the use of foul language addressed to anyone, and in particular to a law enforcement officer; yet, finding the use of foul language to be socially unacceptable is not the same as making it the basis for denying one a first amendment right to free speech.

In my view the ordinance is vague and, therefore, in violation of the Constitution. I believe that this is a case in which we can make that determination. I further believe that the evidence is insufficient to establish beyond a reasonable doubt that the officer in question could have been inconvenienced, annoyed, or alarmed. I have difficulty believing that one with a loaded

revolver can be annoyed by one with a loaded mouth.

SHANAHAN, J., dissenting.

I join Chief Justice Krivosha in his dissent that the questioned ordinance is unconstitutionally vague, but make additional comment about the ordinance's vagueness. What is sought to be prohibited by the ordinance is "inconvenience, annoyance or alarm," or creating the risk of causing such situations or conditions. To paraphrase the basic prohibition of the ordinance, it is unlawful to make trouble for somebody, to irritate someone, to frighten anybody, or to bring about the possibility or danger of causing trouble, irritation, or fright to anyone. Such nebulous and subjective situations cannot constitutionally be the basis for prosecution. The various subparts of the ordinance are only a futile facade for vagueness.