In re Interest of Rory A. Siebert, a child under 18 years of age.
State of Nebraska, appellant, v. Rory A. Siebert, appellee.

390 N.W.2d 522

Filed July 18, 1986.   No. 85-795.

Michael G. Heavican, Lancaster County Attorney, and Leigh Ann R. DeVore, for appellant.

Roger C. Lott, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Caporale, J.

The State instituted this proceeding to have Rory A. Siebert declared subject to the juvenile court's jurisdiction as a delinquent under the provisions of Neb. Rev. Stat. § 43-247(1) (Reissue 1984), alleging that Siebert was under 16 years of age and had committed "an infraction under the laws of this state." Specifically, the State claimed that Siebert had violated Neb. Rev. Stat. § 28-310(1)(b) (Reissue 1985), which provides that one commits a third degree assault if he "[t]hreatens another in

a menacing manner." Siebert challenged the constitutionality of § 28-310(1)(b), claiming it to be both overbroad and vague. The juvenile court ruled that the statute is unconstitutionally vague and dismissed the proceeding. The State took exception to the ruling and, pursuant to leave, has appealed under the provisions of Neb. Rev. Stat. § 29-2315.01 (Reissue 1985). We sustain the State's exception and remand the cause for further proceedings.

The parties have stipulated that if the State's witness, Rod Dietrich, were to testify, he would say that Siebert and a companion came onto the grounds of a Lincoln school where Dietrich taught and that Siebert interfered with the play of other children. Dietrich therefore ordered Siebert and his companion to leave the playground. Dietrich then grabbed the companion's bicycle and again told the boys to leave. Thereupon, Siebert got off his bicycle, threatened to strike Dietrich with his fist, and simulated karatelike motions, saying he would hurt Dietrich if he did not leave Siebert and his companion alone.

It was further stipulated that if Siebert were to testify, he would say that he had entered the playground with the permission of another teacher and "playfully chased a young person he knew." He and his companion were then ordered to come behind a backstop or leave, and after further discussion were ordered by Dietrich to depart. As the boys were protesting, Dietrich grabbed the companion's bicycle and ordered them to leave, but refused to let go of the bicycle. Dietrich then pushed the companion off his bicycle and continued to hold it, in spite of the fact that the boys said they would leave if Dietrich would return the bicycle. After more discussion Siebert got off his bicycle and simulated a karate kick, "intending only to convince Rod Dietrich to return the bicycle to [his companion] so they could leave the area."

It is first necessary that we determine exactly what it is that § 28-310(1)(b) proscribes. Thus, we need to establish the meaning of the words "assault," "threaten," and "menacing."

"Assault" is understood in the criminal law to include the intentional doing of an act which places another person in reasonable apprehension of receiving bodily injury. See, *State*

*v. Packett,* 206 Neb. 548, 294 N.W.2d 605 (1980); *State v. Machmuller,* 196 Neb. 734, 246 N.W.2d 69 (1976).

To "threaten" is commonly understood to mean promising punishment, reprisal, or distress. Webster's Third New International Dictionary, Unabridged 2382 (1981).

The meaning of "menacing" commonly includes the showing of an intention to do harm. Webster's Third New International Dictionary, Unabridged 1409 (1981).

Thus, § 28-310(1)(b) renders unlawful a promise to do another person bodily harm which is made in such a manner as to intentionally cause a reasonable person in the position of the one threatened to suffer apprehension of being so harmed.

In upholding a statute regulating the political activities of state employees, the U.S. Supreme Court, in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), observed that where conduct and not merely speech is involved, the overbreadth of a statute must be judged in relation to its plainly legitimate sweep. In *State v. Guy,* 196 Neb. 308, 242 N.W.2d 864 (1976), we held that refusing to heed the presiding officer, preventing the taking of a vote, and resisting the sergeant-at-arms, accompanied by a raised voice, violated an ordinance against purposely or knowingly disturbing or disrupting a lawful meeting. We recently held in *State v. Groves,* 219 Neb. 382, 363 N.W.2d 507 (1985), that "fighting words" are not protected by the free speech clause of the first amendment to the U.S. Constitution. Therefore, to suggest that the menacing conduct prohibited by § 28-310(1)(b) is protected by that amendment is untenable. Further, we conclude the guarantee that every "person may freely speak . . . being responsible for the abuse of that liberty . . .," contained in article I, § 5, of this state's Constitution, does not provide any greater protection in this regard than does the first amendment to the U.S. Constitution.

Since § 28-310(1)(b) is not overbroad, for it does not reach a substantial amount of constitutionally protected conduct, the question which remains is whether § 28-310(1)(b) is impermissibly vague. *State v. Sinica,* 220 Neb. 792, 372 N.W.2d 445 (1985).

In arguing that the statute is so vague, Siebert reminds us that

we recently, in *State v. Hamilton*, 215 Neb. 694, 340 N.W.2d 397 (1983), declared Neb. Rev. Stat. § 28-311(1)(a) (Reissue 1985) to be such. That statute provided that threatening to commit any crime "likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person" constituted a punishable terroristic threat. The underlying rationale of *Hamilton* is that the statute left uncertain both what constituted a threat and what constituted the likely result required. Accordingly, § 28-311(1)(a) violated the rule that the language of a criminal statute may not be so vague as to leave to conjecture the dividing line between that which is lawful and that which is unlawful. Stated another way, *Hamilton* holds that the definition of a crime must be of sufficient definiteness as to provide ascertainable standards of guilt such as to inform those subject thereto of the conduct which will render them liable to punishment thereunder.

Siebert's conduct, by his own version of the facts, falls squarely within the prohibition of § 28-310(1)(b). The simulated karate kick directed toward Dietrich was conduct such as to place a reasonable person in Dietrich's position in apprehension of being bodily harmed. Siebert's statement that it was his intention to convince Dietrich to return the bicycle fulfills the requirement that the threat be made with the intention that a reasonable person in Dietrich's position be placed in apprehension of bodily harm.

Since Siebert's conduct comes within the prohibition of § 28-310(1)(b), and since the statute is not overbroad, we need not speculate as to whether the act might be vague in the context of someone else's conduct. That is so, for one whose actions are clearly proscribed by a statute which does not reach a substantial amount of constitutionally protected conduct cannot complain of its vagueness as applied to the actions of others. *State v. Sinica, supra*.

The State's exception is sustained and the cause remanded for further proceedings.

EXCEPTION SUSTAINED AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority in this case. I do so on several grounds.

For reasons more specifically set out in my dissent in *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985), I believe that we are obligated to consider the argument that the statute is vague without regard to whether this particular appellee clearly falls within the language of the statute. For a further discussion of the matter, see Note, *State v. Groves: The Disorderly Conduct of Overbreadth Analysis in Nebraska*, 65 Neb. L. Rev. 584 (1986).

I further believe that the majority is in error in concluding that the statute in question is not overbroad. In order for the majority to reach its conclusion, it necessarily had to define a term within the statute and, in effect, add words which simply are not there. Such action is clearly contrary to the rules presently in effect in this jurisdiction. In *State v. Beyer*, 218 Neb. 33, 37, 352 N.W.2d 168, 171 (1984), we noted: " 'It is a fundamental principle of statutory construction that a penal statute is to be strictly construed.' " Furthermore, we have many times said: "A court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes and this is particularly true where it appears . . . that the matter was intentionally omitted." *Bessey v. Board of Educational Lands & Funds*, 185 Neb. 801, 804, 178 N.W.2d 794, 797 (1970).

In order to find that Neb. Rev. Stat. § 28-310(1)(b) (Reissue 1985) is not overbroad, the majority has had to define the term "assault." In doing so the majority has said that the word "assault," as it applies to § 28-310(1)(*b*), "is understood in the criminal law to include the intentional doing of an act which places another person in reasonable apprehension of receiving bodily injury." While it is true that decisions can be found which hold that if one is placed "in reasonable apprehension," an assault has occurred, no case can be found which holds that one cannot be found guilty of an assault if the victim is *not* placed in apprehension. The reason is quite simple. It is clearly recognized in criminal law that one may be criminally assaulted without ever knowing that he or she is about to be injured, as is

the case when one is struck from behind or is injured upon opening a booby-trapped package. In *United States v. Bell*, 505 F.2d 539 (7th Cir. 1974), the defendant was convicted of "assault with intent to commit rape" upon a female geriatric patient suffering from a mental disease of such extent that she was incapable of forming a reasonable apprehension of bodily harm. The patient was not in fact raped because Bell was apprehended before the act was committed. The defendant appealed, maintaining that no crime was committed because the mental patient was not able to comprehend what was about to happen to her and, therefore, was not placed in apprehension. In rejecting that contention the U.S. Court of Appeals for the Seventh Circuit said at 540:

"There may be an attempt to commit a battery, and hence an assault, under circumstances where the intended victim is unaware of danger. Apprehension on the part of the victim is not an essential element of that type of assault." (Footnotes omitted.)

We adhere to that statement of the law. When a federal criminal statute uses a common law term without defining it, the term is given its common law meaning. [Citations omitted.] A criminal assault at common law was originally an attempt to commit a battery.

The court of appeals went on to say at 541:

Since an attempted battery is an assault, it is irrelevant that the victim is incapable of forming a reasonable apprehension. . . .

. . . .

"Moreover, it is not always necessary that the unlawful attempt should create in the person assaulted 'a reasonable apprehension of immediate bodily harm', because an assault may be committed upon a person without his knowledge of it as in case of an assault upon an unconscious sleeping person, or even upon an infant just born. The rule in a civil action that apprehension of harm is usually required has no sound foundation in the criminal law of assaults."

For reasons not at all apparent from the language of the statute, the majority has now concluded that one may not be

guilty of "threaten[ing] another in a menacing manner" unless a reasonable person in the position of the one threatened is placed in apprehension. I know of no reason why § 28-310(1)(b) should be read in that narrow a manner. Why a letter threatening to blow up an individual or a telephone call threatening to cause bodily harm to another should not be considered a violation of § 28-310(1)(b) escapes me.

The Nebraska statute is taken, to a large extent, from the Model Penal Code. Model Penal Code § 211.1(1)(a) (1980) is the equivalent section to our § 28-310(1)(a) and § 211.1(1)(c) is the equivalent of § 28-310(1)(b). The Model Penal Code makes it clear that the notion of apprehension was intended in § 211.1, in that it reads: "A person is guilty of assault if he: . . . (c) attempts by physical menace to put *another in fear of imminent serious bodily injury.*" (Emphasis supplied.) The Legislature, therefore, was fully aware of how it could adopt a statute which required apprehension. Yet, it chose to reject the Model Penal Code and, instead, draft the statute as it is found in § 28-310(1)(b). There is no requirement in § 28-310(1)(b) that the victim of the alleged assault be "put in fear." It seems obvious that one can "threaten" someone in "a menacing manner" but, for whatever reason, provoke no response from the person threatened. One must conclude, therefore, that the Nebraska Legislature did not intend to limit the statute to apprehension, or at least one must conclude that it is not clear exactly what the Legislature intended, and, therefore, the statute is vague and overbroad.

There is a further difficulty with the majority opinion as I view it. There are three sections covering assault. Neb. Rev. Stat. § 28-308 (Reissue 1985) defines assault in the first degree, Neb. Rev. Stat. § 28-309 (Reissue 1985) defines assault in the second degree, and § 28-310 defines assault in the third degree. In each instance the word "assault" appears without further explanation. In §§ 28-308, 28-309, and 28-310(1)(a), it appears clear that assault is not limited to situations in which a reasonable person is placed in apprehension of being harmed, and an assault in any one of those cases, even if unknown to the victim, is a violation of the statute. Yet, in § 28-310(1)(b) we modify and redefine the very same word, "assault," by

inserting by definition into the statute the concept of apprehension. It is a standard rule of construction that a word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears. See *Seward County Rural Fire Protection Dist. v. County of Seward*, 156 Neb. 516, 56 N.W.2d 700 (1953). That appearance, however, cannot be supplied by the court. I find nothing in the three sections which compels a conclusion that § 28-310(1)(*b*) is to be read differently than §§ 28-308, 28-309, or 28-310(1)(*a*). One may argue that such an interpretation is reasonable. But it is not the only interpretation which can be read. The purpose of the statute, as defined by the majority, may be reasonable. That, however, is not our function. We are not to legislate, only to strictly construe. I believe that the majority is in error by adding words to the statute in order to give it clarity. Absent the words added by the majority, the meaning of "threatens another in a menacing manner" is clearly overbroad and, as observed by the trial court, unconstitutionally vague. I would have affirmed the decision of the separate juvenile court.