■ In the Matter of MELVIN M. MOSKOWITZ et al., Petitioners, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondents.— Proceeding instituted in this court pursuant to subdivision 4 of section 6510 of the Education Law to review determinations of the Commissioner of Education suspending the license of the individual petitioner Melvin M. Moskowitz to practice pharmacy in the State of New York for a period of one year, and suspending the certificate to conduct a retail pharmacy of the petitioner Rosenberg's Pharmacy, Inc., for a period of one year with execution thereof stayed. Without going into detail as to the specifications, charges of unprofessional conduct were brought against the petitioners alleging a failure to maintain proper, adequate and correct records of the receipt and disposition of narcotic drugs and of depressant and stimulant

drugs and of exempt narcotic drugs during certain periods in 1969 and 1970, and of filling 39 forged prescriptions for narcotic drugs not in good faith during said periods. Petitioners contend that the findings of the Commissioner of Education sustaining the charges were arbitrary in that they are not supported by substantial evidence. With regard to the charges based upon failure to maintain proper, adequate and correct records, petitioners contend, essentially, that certain shortages of narcotics and other drugs discovered upon audit were not the result of improper diversion, but rather the result of a burglary of the premises, and further urge that certain shortages and overages in their various drug supplies were *de minimis,* and therefore do not constitute violations. These contentions are patently without merit. The petitioners were not charged with having improperly diverted the drugs. Regardless of the cause of their diversion, petitioners do not dispute the fact that their records failed to indicate the loss, clearly in contravention of subdivision 9 of section 3333 of the Public Health Law,* which requires records to contain "a detailed list of narcotic drugs lost, destroyed or stolen, if any, the kind and quantity of such drugs and the date of discovery of such loss, destruction or theft. A report of such loss, destruction or theft and other pertinent related facts shall be furnished promptly to the commissioner." No such records were kept nor was any such report furnished to the commissioner. Moreover, there is a valid public purpose to the requirement that precise records of dangerous drugs be kept, and the commissioner may properly take the view that no violations, regardless of how "minor", should be tolerated. At best, the degree of the violation is a matter to be taken into consideration in assessing the penalty, but there is no basis for holding that a *"de minimis* violation" is not a proper foundation for a determination that petitioners, in failing to comply with the requirements for record-keeping, were guilty of unprofessional conduct. With regard to the forgeries, petitioners contend that the prescriptions were regular on their face, and therefore raised no duty of further inquiry as to their validity. On the other hand, the Assistant Director of the New York State Department of Health, Bureau of Narcotic Control, testified that the good faith requirement for the sale of narcotic drugs (Public Health Law, § 3322, subd 1) and stimulant or depressant drugs (Public Health Law, § 3381, subd 1) imposes a duty upon the pharmacist to inquire into the *bona fides* of a prescription and satisfy himself as to its validity before filling it. Among the factors which might have alerted a diligent pharmacist as to the need for inquiry, and which were testified to as having been present in the instant case, were the issuance of a prescription on the form of a New Jersey physician to a Manhattan resident which was attempted to be filled in this Bronx pharmacy; the fact that one or more customers returned repeatedly to fill prescriptions for narcotic or stimulant or depressant drugs when such customers had previously received prescriptions for identical drugs, the supply of which would not have been exhausted had they been consumed in accordance with the directions on the prescription; and the fact that certain prescriptions required that they be filled in containers which appeared to be improper in size relative to the quantity of the drugs prescribed. Another factor which the evidence established should have prompted inquiry in the present case was the large quantity of Dolophine (methadone) prescribed in certain instances. At the very minimum, the same considerations which prompted the Court of Appeals to recognize "the need for the administrative formulation of standards of professional conduct

---

* All citations are to the then applicable sections of the Public Health Law.

in order to protect the public" held applicable to real estate brokers in *Matter of Gold v Lomenzo* (29 NY2d 468, 476) are applicable to the profession of pharmacy, where the danger to the public of professional misconduct is potentially greater. As the court noted in *Gold (supra)*, the concept of "unprofessional conduct" has never been held to require specific legislative enumeration as to the precise deviations which fall within its definition. In the instant case, it appears to our satisfaction that the findings of the respondent more than adequately establish that petitioners did not act in good faith in filling the prescriptions in question in the circumstances of the present case. We therefore conclude that the findings of the respondent are supported by substantial evidence and must be affirmed. Petitioners further contend that the imposition of a suspension of their licenses for a period of one year is an abuse of discretion. It has repeatedly been held that the test in such a case is whether the punishment is "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" *(Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck*, 34 NY2d 222, 233). As we said in a recent case involving the suspension of a pharmaceutical license, "[w]e do not find the measure of discipline here to be disproportionate to the offense nor shocking to our sense of fairness" *(Matter of Jay v Board of Regents of Univ. of State of N. Y.*, 50 AD2d 967). Determinations confirmed, and petition dismissed, without costs. Koreman, P. J., Greenblott, Sweeney, Kane and Mahoney, JJ., concur.