In the Matter of HENRY A. CAMPERLENGO, Petitioner, v MARTIN C. BARELL, as Chancellor of the Board of Regents for the State of New York, et al., Respondents.

Third Department, January 3, 1991

## APPEARANCES OF COUNSEL

*Feit & Schlenker (Dennis B. Schlenker* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Barbara K. Hathaway* of counsel), for respondents.

### OPINION OF THE COURT

YESAWICH, JR., J.

This proceeding represents another facet of the litigation generated by the failure of petitioner, a psychiatrist, to provide the Department of Social Services (hereinafter DSS) with adequate copies of certain of his Medicaid patients' medical records. The Court of Appeals determined that the efficient administration of the Medicaid program outweighed petitioner's claim of patient-physician privilege and overrode his refusal to make those records available *(Matter of Camperlengo v Blum,* 56 NY2d 251, 255-256). Thereafter, petitioner disclosed some information, but DSS determined that the records were inadequate for 34 of petitioner's patients and sought reimbursement in the amount of $76,077.26 for overpayment and interest. After an administrative hearing, petitioner was found guilty of violating 18 NYCRR former 515.1 (a) and 18 NYCRR former 515.2 (b) (11) essentially for failing to maintain adequate records. As a consequence of this determination, petitioner was permanently disqualified from participating in the Medicaid program and directed to reimburse DSS for the overpayment. This determination was confirmed *(Matter of Camperlengo v Perales,* 120 AD2d 883, *lv denied* 68 NY2d 606).

Thereafter, respondent State Board for Professional Medical Conduct charged petitioner with professional misconduct within the meaning of Education Law § 6509 by reason of his failure to comply with the above-noted DSS regulations and initiated a direct referral proceeding. The Regents Review Committee held an expedited hearing pursuant to Public Health Law § 230 (10) (m) (iv) which was aimed at securing evidence solely related to the issue of the penalty to be imposed. Relying entirely upon DSS' determination, the Regents Review Committee found petitioner guilty of unprofessional conduct pursuant to 8 NYCRR 29.2 (a) (3) and 29.1 (b) (1). The Board of Regents (hereinafter Board) accepted these findings and suspended petitioner's license to practice medicine for five years, four of which were stayed while petitioner was placed on probation, and ordered petitioner to perform 100 hours of community service. This proceeding ensued.

The Legislature has provided that, in certain situations,

medical misconduct charges may be brought by way of an expedited procedure: "In cases of professional misconduct * * * based solely upon a finding of a violation of a state * * * regulation pursuant to a final decision or determination of an agency having the power to conduct the proceeding and after an adjudicatory proceeding has been conducted * * * *where the violation resulting in the final decision or determination would constitute professional misconduct pursuant to section sixty-five hundred nine of the education law,* the commissioner may * * * refer the matter directly to a regents review committee for its review and report of findings, determinations as to guilt, and recommendations as to the measure of discipline to be imposed" (Public Health Law § 230 [10] [m] [iv] [emphasis supplied]). The parties disagree as to whether a finding that petitioner violated DSS regulations 18 NYCRR former 515.1 (a) and 18 NYCRR former 515.2 (b) (11) necessarily constitutes unprofessional conduct under Education Law § 6509 (9) as defined by 8 NYCRR 29.2 (a) (3) and 29.1 (b) (1).

The question presented to us in this proceeding is not whether petitioner violated the Department of Education record-keeping regulations,* but rather whether the Regents Review Committee could permissibly utilize the expedited procedure outlined in Public Health Law § 230 (10) (m) (iv). This statute requires that before the Board may employ the expedited procedure, "the violation resulting in the final decision" must constitute professional misconduct (Public Health Law § 230 [10] [m] [iv]). Accordingly, the DSS regulation must be scrutinized to determine whether its breach necessarily equates to unprofessional conduct.

Unquestionably, an act which violates a DSS regulation may also violate a Department of Education regulation and constitute unprofessional conduct *(see, e.g., Matter of Hee K. Choi v State of New York,* 74 NY2d 933, 937). Such a finding is not, however, automatic. These regulations, it must be remembered, serve related but different purposes. The DSS regulations are aimed at protecting the Medicaid system from fiscal abuse *(see,* 18 NYCRR 515.1 [b] [1]). In contrast, the Department of Education's regulations dealing with unprofessional conduct generally serve to ensure that patients receive adequate medical care *(see generally,* 8 NYCRR 29.2). Theoreti-

---

* For this reason, it is irrelevant that the DSS Administrative Law Judge found that petitioner had failed to keep any records for at least 14 of his patients.

cally, a physician who engages in professional misconduct also contravenes the purpose of the DSS regulations for the government has no wish to pay for inadequate professional services. On the other hand, a physician could disregard a DSS accounting or record-keeping regulation and yet obviously still furnish competent medical care.

In the case at hand, putting aside the DSS Administrative Law Judge's gratuitous comment that petitioner's blatant disregard for the DSS record-keeping requirements constituted the "commission of unprofessional conduct in the practice of medicine", the only violation of which petitioner was found guilty was failing to keep records which "fully disclose[d] *the extent of* the care, services or supplies furnished" (18 NYCRR former 515.2 [b] [11] [emphasis supplied]). We do not believe that such a violation automatically equates to a finding that petitioner "fail[ed] to maintain a record for each patient which accurately reflect[ed] the *evaluation and treatment of* the patient" (8 NYCRR 29.2 [a] [3] [emphasis supplied]) or that any such violation was "willful" (8 NYCRR 29.1 [b] [1]); clearly these regulations are not interchangeable. Arguably, the former regulation was designed to ensure that physicians bill Medicaid only for necessary services actually provided, while the latter record-keeping requirement "provide[s] meaningful medical information to other practitioners should the patient transfer to a new physician or should the treating physician be unavailable for any reason" *(Matter of Schwarz v Board of Regents,* 89 AD2d 711, 712, *lv denied* 57 NY2d 604). Accordingly, we hold that a violation of 18 NYCRR former 515.2 (b) (11) (the DSS record-keeping requirement) does not per se constitute a willful (8 NYCRR 29.1 [b] [1]) violation of 8 NYCRR 29.2 (a) (3) (the Department of Education's record-keeping regulation). Therefore, respondents had no authority to resort to the expedited procedure of Public Health Law § 230 (10) (m) (iv).

Contrary to petitioner's contention, however, respondents are not limited to prosecuting his transgressions solely by way of the expedited procedure delineated in Public Health Law § 230 (10) (m) (i). Had respondents wished to utilize an expedited process, this procedure would have been appropriate because petitioner repeatedly violated record-keeping regulations. Be that as it may, respondents retained the discretion to treat petitioner's violation as other than minor or technical

and to conduct a full hearing *(see, Matter of Moskowitz v Board of Regents,* 51 AD2d 836, 838, *lv denied* 39 NY2d 706).

MAHONEY, P. J., WEISS, MIKOLL and HARVEY, JJ., concur.

Determination annulled, without costs, and matter remitted to the Board of Regents for further proceedings not inconsistent with this court's decision.