Scileppi, J.
This appeal addresses itself to the suspension of appellant’s real estate broker’s license on a finding by respondents that appellant had demonstrated untrustworthiness within the meaning of section 441-c (subd. 1) of the Real Property Law.[1]
This administrative determination was predicated on charges filed by four clients who had utilized appellant’s services in their search for rent-controlled apartments in Bronx County. A hearing was conducted on May 14, 1969 and the findings of fact made by respondents ’ hearing examiner reveal that in four instances appellant had exacted finders ’ fees which were far in excess of rates suggested by the Bronx Real Estate Board. These transactions may be stated in the following manner:

In the Day transaction, a specific finding was made that an extra commission of $300 over and above the basic commission of $105 had been required by appellant’s salesmen because the apartment sought was considered desirable.[2] These sums had been paid in part by the client, but no receipt was given. At the time of the hearing all but $50 had been returned to the Days and an additional $150 in marked bills, which had been used by the Days in an unsuccessful criminal prosecution against two of appellant’s salesmen for rent gouging.
*473 In the Campbell and Palmer transactions, the tenants occupy apartments found by appellant and now claim that the commissions which they paid were excessive.
In the Battler case, the tenant was never able to occupy the apartment which appellant found. Though she signed a lease and paid $311.85 for rent, security and commission ($160 of which was charged as commission), the apartment was unavailable on the date promised in the lease. Since she also had signed an apartment rental agreement, which provided that no refunds would be made if the apartment became ready within 30 days of the date promised and the apartment became available during that time, appellant refused to refund her money. The use of this 30-day provision was deemed improper by the hearing examiner.
With regard to the fees, the hearing examiner recognized that a broker could lawfully charge a fee in excess of the guidelines established by the Beal Estate Board if legitimate services were involved. However, it was concluded that: ‘ ‘ The varied and excessive amounts collected, the absence of any established formula or basis for computation by the broker and the inability of the broker to demonstrate what extra or unique services were rendered over and beyond the normal services rendered by brokers in such transactions reflects that the excessive amounts collected in the guise of commissions were unrelated to services rendered and were in fact a bonus for preferential treatment in securing desirable apartments.”
As a result of these findings, appellant’s license was suspended for three months commencing with August 15, 1969 or, in lieu thereof, a fine of $250 was imposed. It was further ordered that the said license was to be suspended indefinitely until appellant:
(1) filed proof that he had refunded amounts totaling $585.85 to the four complaining clients and returned $150 to the District Attorney of Bronx County;[3] and
(2) filed statements with respondents that he had deleted the objectionable 30-day provision from the apartment rental agree *474 ment and would limit commissions in future transactions to one month’s rent.
Thereafter, on July 29, 1969 appellant was served with an order of suspension. Respondents granted a 10-day extension and the suspension became effective on August 25,1969. Instead of surrendering his license, as required by section 441-c (subd. 2) of the Real Property Law, appellant commenced a proceeding in the United States District Court for the Southern District of New York in which he sought an injunction restraining the suspension of his license and a statutory court to consider the constitutionality of section 441-c of the Real Property Law. The application was denied (Gold v. Lomenzo, 304 P. Supp. 3), but on appeal, the United States Court of Appeals for the Second Circuit reversed on the ground that appellant’s contention that respondents ’ limitation on the level of his commission was confiscatory presented a substantial constitutional question which required a three-Judge court (Gold v. Lomenzo, 425 F. 2d 959). On remand, the statutory court noted that the instant article 78 proceeding was pending in the State courts and concluded that it should withhold decision until appellant had exhausted his State remedies (Gold v. Lomenzo, 314 F. Supp. 871).
It appears that while the Federal proceeding was sub judice, respondents — on notice to appellant and after a hearing at which he chose not to participate — issued an order revoking appellant’s license. The determination was made as of October 31, 1969, the normal expiration date of the license, and seems based on a finding of untrustworthiness in that appellant had failed to surrender his license and had continued to engage in brokerage business after he had been suspended. For reasons which are not explained, the article 78 proceeding now before us, though commenced on November 18, 1969, fails to question the revocation order and instead, limits itself to the suspension order.
Special Term, finding that appellant’s arguments, with regard to the constitutionality of section 441-c of the Real Property Law, and the propriety of the administrative action employed by respondents, were wanting in substance, dismissed the petition. The Appellate Division unanimously dismissed, as academic, appellant’s appeal to that court upon the ground that the order of suspension had been superseded by the order of revo *475 cation. It was added, however, that were it to reach the merits, it would have confirmed the administrative decision except insofar as it purported to limit the commissions which appellant could charge in future transactions.
Respondents suggest that the Appellate Division properly dismissed the appellant’s appeal as academic. Relying—as did the court below—on Matter of Daub v. Board of Regents (33 A D 2d 964, 965), it is argued that in view of the fact that appellant failed to secure judicial review of the revocation order, and instead limited this article 78 proceeding to the suspension order, only abstract questions are presented. Daub is inapposite since no question as to superseding orders was presented therein. In that article 78 proceeding, unlike the one at bar, review of a revocation order was sought. The matter was deemed academic because the petitioner had died. As the court wrote: ‘ ‘ Where a subsequently occurring event operates to destroy the finality of a determination or to make the question involved merely academic or abstract, it may be given consideration in deciding whether such determination shall be reviewed at all (Matter of Weeks, 97 App. Div. 131; 24 Carmody-Wait 2d, New York Practice, § 145:348). Because of said petitioner’s death, if we annul the determination, there is no one to whom his license can be restored. Similarly, if we confirm, there is no one whose license can be revoked. Thus, the proceeding is academic as to said petitioner.” (id., p. 965).
It is, of course, true that a realistic problem of similar magnitude is presented in this appeal. The record in the revocation proceeding is not beforó us. Thus, even if we were to find fault with the order of suspension, we would have no power to disturb the order of revocation. Therefore, unless we were to declare unconstitutional the statute under which both the suspension and revocation were ordered, appellant will have to wait one year from the date of the revocation order before he can apply for relicensing (Real Property Law, § 441-c, subd. 4). Nevertheless, and notwithstanding these practical limitations, it is our view that the revocation and suspension orders were intertwined to such a degree so as to preclude adoption of a conclusion that the revocation order rendered the questions raised in this article 78 proceeding academic. In any event, there is ample authority that a matter, although settled as between the parties, *476 will not be considered academic when the underlying questions are of general interest, substantial public importance and likely to arise with frequency (Matter of Bell v. Waterfront Comm., 20 N Y 2d 54, 61; East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 133; Matter of United Press Assns. v. Valente, 308 N. Y. 71, 76). The questions presented in this appeal, particularly those which relate to the propriety of the conditions which respondents imposed in the suspension order, fall into this category and, it was error for the Appellate Division to dismiss the appeal. Given such a conclusion, our ordinary course would be to remit to the Appellate Division for a determination of the merits. However, inasmuch as the Appellate Division opinion reveals that the merits were considered below, we may reach the substantive issues presented.
Appellant argues that section 441-c of the Real Property Law is unconstitutional on its face because the words ‘ ‘ demonstrated untrustworthiness ” as used therein are vague and indefinite.[4] In our opinion, the legislation in question suffers from no constitutional infirmity.
For many years real estate brokers have been regulated by the provisions of article 12-A of the Real Property Law and our court has recognized the need for the administrative formulation of standards of professional conduct in order to protect the public (Matter of Sullivan Co., 289 1ST. Y. 110, 114; Roman v. Lobe, 243 N. Y. 51, 54). Although it does not appear that this court has specifically addressed itself to the issue posed at bar, it has been observed in several Appellate Division cases that the Legislature has given respondents wide discretion in determining what conduct can constitute “ untrustworthiness ” (Matter of Abel v. Lomenso, 25 A D 2d 104; Matter of Frank v. Department of State, 14 A D 2d 139). Indeed, courts, recognizing the inherent flexibility in the term “ untrustworthiness ”, have been careful not to fashion, nor require rigid definitions *477 (see Matter of Diona v. Lomenso, 26 A D 2d 473). As one court observed: “We do not here attempt to define ‘ untrustworthiness ’ or fix the absolute limits of its application. However, there should be such factual presentation concerning acts or conduct by the licensee or his agent as would warrant a conclusion of unreliability, and which establishes that any confidence or reasonable expectation of fair dealing to the general public would be misplaced. It is apparent from the context in which the term ‘ untrustworthiness ’ appears in the statute that the Legislature intended the Secretary of State to be vested with a wide discretion in determining what should be deemed untrustworthy conduct. (Of. Matter of Edelstein v. Department of State, 16 A D 2d 764; cf. Matter of Abel v. Lomenso, 25 A D 2d 104, supra] Matter of Tegeler v. Department of State, 23 A D 2d 917; Matter of Frank v. Department of State, 14 A D 2d 139; Matter of Smith v. Department of State, 3 A D 2d 954; Matter of Scheidecker v. Department of State, 242 App. Div. 119, mod. on rehearing 242 App. Div. 891.) This is as it should be for his is the obligation of protecting the public against wrongdoing or incompetency.” (Matter of Ghiaino v. Lomenso, 26 A D 2d 469, 472-473.)
Although these considerations may justify the administrative discretion enjoyed by respondents, it is equally true that they must be circumscribed by. the due process requirement that a statute may not suffer from vagueness. The test, as stated by Judge Keating in .People v. Byron (17 N Y 2d 64, 67), “is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal but this requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.” Section 441-c of the Real Property Law satisfies the test. The concept of “ untrustworthiness ” is similar to that of “unprofessional conduct” found in other regulated callings and it has never been necessary for the Legislature to specifically enumerate the precise deviations which it considers unworthy of a particular profession (see Friedman v. State of New York, 24 N Y 2d 528, 540-541, remittitur amd. 25 N Y 2d 905, app. dsmd. 397 U. S. 317; Matter of Bell v. Board of Regents, 295 1ST. Y. 101, 108). Stated differently, the term *478 “ untrustworthiness ” is sufficiently certain to real estate brokers to apprise them of the scope of permissible activities (cf. Matter of Cherry v. Board of Regents, 289 N. Y. 148) and it is the standards of that calling which serve as the guide for their behavior.
It was for deviations from these professional norms that appellant was found to have demonstrated untrustworthiness. Evidence introduced at the hearing indicated that appellant’s fees were far in excess of what the local real estate board considered usual and he was unable to explain what special services were rendered to earn these fees. Additionally, it was revealed that appellant had no established formula or basis for the computation of commissions. Although appellant has correctly observed that neither the real estate board nor respondents had authority to fix fees, the amount of the fees and their relevance to actual services were matters which were properly considered by respondents in evaluating the complaints filed against appellant.
Brokers’ fees must represent charges for actual services and it has been said by this court in People v. Greenwald (299 N. Y. 271, 280), a case involving a prosecution under the “ rent gouging ” statute (Penal Law, § 180.55; former Penal Law, § 965), that: ‘ ‘ The Real Property Law, in permitting a broker to collect commissions for legitimate services (Real Property Law, §§ 442-d, 440 et seq.), gives him no general license to exact tribute from a prospective tenant on the strength of a representation that such a payment will yield to the latter an advantage over others in securing a lease. The question presented upon the trial of a broker defendant is not different in any essential from that involved in the case of an unlicensed person. In each, the issue is, was the payment in fact exacted as a special premium of the type condemned, or was it received in payment of some legitimate servicef ” (Emphasis supplied.) This principle is applicable in the case before us. Specific findings were made that two of the complainants (Day and Campbell) had been made to pay high fees because of the desirability of the apartment and not because of any unusual services[5] rendered.
*479 Thus, there was substantial evidence upon which respondents could reasonably conclude that appellant had demonstrated untrustworthiness and it was proper, under the provisions of section 441-c of the Real Property Law, for respondents to discipline appellant by suspending his license. Appellant suggests that although respondents may legitimately order a suspension, no authority exists for the imposition of conditions on its duration. We disagree. It is, of course, true that no specific authorization is to be found in the statute. However, given the general power to suspend licenses, there is an inherent power to impose conditions (Matter of Edelstein v. Department of State, 16 A D 2d 764). Such a power is not unlimited, but rather must be restricted by a requirement that conditions be reasonable and relate to the broker’s professional activities as to matters which are within respondents’ official province and area of control.
As a result of this authority, where a broker is disciplined because he demonstrated untrustworthy conduct by charging excessive fees which bear no relation to legitimate services, respondents may legitimately condition the suspension on the return of those excessive fees. It is for this reason that the reimbursement ordered in the Day, Campbell and Palmer transactions was a valid exercise of respondents’ powers, and appellant has failed to effectively demonstrate any error in the manner in which they were imposed or in their amount. The refund ordered in the Rattler transaction is a different matter. Here the client never took an apartment because it was unavailable on the date promised in the lease. She was, nevertheless, forced to forfeit $311.85 representing the security, rent and commission because she had signed an apartment rental agreement with the 30-day grace period previously referred to. Although respondents could reasonably conclude that a broker should not be allowed to vary the terms of a lease which he is not a party to and that the 30-day provision could no longer be used, it is undisputed in the record that respondents had specifically approved the 30-day provision in December, 1968. The client had freely agreed to its terms. Consequently, appellant should not be penalized for using this clause in his rental agreement and the condition with regard to the Rattler transaction was arbitrarily and unreasonably imposed. However, in view of the finding that the Rattler commission exceeded the guidelines established by the Real Estate *480 Board by some $86.98 and does not reflect unusual services rendered, a refund in that amount should have been ordered in the same manner as in the other transactions.
As far as the remaining condition is concerned, i.e., the limitation of fees in future transactions to one month’s rent, we agree with the Appellate Division that the condition was arbitrary. Inasmuch as there is no statute authorizing the fixing of fees, brokers are entitled to commissions for legitimate services (People v. Greemoald, 299 K Y. 271, 280, supra). This consideration was recognized in the findings made by respondents’ hearing officer; yet he chose to arbitrarily limit future fees. Such a determination was confiscatory and placed appellant in an uncompetitive position in the market place as it would deprive him of compensation in situations where his services exceeded the norm.
Accordingly, having considered appellant’s remaining arguments and finding them to be without merit, the order appealed from should be modified, without costs, to the extent of deleting, from respondents’ determination, the condition limiting fees in future transactions and reducing the refund to Fay Battler to $86.98.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

. This section provides for the imposition of a fine, reprimand, suspension or revocation of a license “ upon conviction of the licensee of a violation of any provision of this article, or for a material misstatement in the application for such license, or if such licensee has been guilty of fraud or fraudulent practices, or for dishonest or misleading advertising, or has demonstrated untrustworthiness or incompetency to act as a real estate broker ”,

. It was found in the Campbell transaction that the fee was fixed at $225 because the apartment was “very valuable”.

. The $150 represented marked bills used by the Days in the unsuccessful criminal prosecution against appellant’s salesmen. The $585.85 encompassed the Days’ unrefunded $50 deposit and $311.85 paid by Mrs. Rattler. It also included $136 to Estella Campbell and $88 to Ralph Palmer which was the difference between the commission paid and the guidelines set by the Real Estate Board.

. Although article 78 proceedings are inappropriate vehicles to test the constitutionality of legislative enactments and it has been said that the proper remedy is an action for a declaratory judgment, the issue is cognizable in the instant proceeding since all necessary parties are before the court and the article 78 proceeding may be treated as an action for a declaratory judgment (CPLR 103, subd. [c]; cf. Matter of Lakeland Water List. v. Onondaga County Water Auth., 24 N Y 2d 400, 407; Matter of Overkill Bldg. Co. v. Delany, 28 N Y 2d 449, 458).

. The fact that appellant’s salesmen were acquitted of rent gouging in the criminal prosecution on the complaint of Mr. Day did not preclude respondents’ hearing examiner from considering testimony as to that transaction and determining whether the fees were for legitimate services.