OPINION OF THE COURT
Karla Moskowitz, J.
Petitioner New York State Society of Obstetricians and Gynecologists, Inc., a not-for-profit corporation, and Jerome J. Schwartz, M.D., as the president of the society, commenced this CPLR article 78 proceeding challenging regulation 124 (11 NYCRR part 152) promulgated by the Superintendent of Insurance as unconstitutional, and arbitrary and capricious. Respondent James P. Corcoran, the Superintendent of Insurance, cross-moves to dismiss the petitions (CPLR 7804 [f]) on the grounds that the proceeding is premature, and that the petition fails to state a cause of action.
In July 1985, the Legislature required the Superintendent to promulgate a regulation establishing a physicians professional liability insurance merit rating plan as part of the Medical Malpractice Reform Act (L 1985, ch 294, § 16), which reflects an individual physician’s or surgeon’s experience with respect to incidents or occurrences of alleged medical malpractice, and which would be reasonable, not unfairly discriminatory, inequitable or violative of public policy (Insurance Law § 2343 [d]). The Legislature directed that the regulation include:
"(1) reasonable standards to be applied in arriving at premium rates, surcharges and discounts based on an evaluation of the hazards of the insured, geographical area, specialities of practice, past and prospective loss and expense experience for medical malpractice insurance written and to be written in this state, trends in the frequency and severity of losses, and the limited nature, if any, of the practice of the insured;
"(2) rules for recognizing experience of individual risks;
"(3) any other factors deemed relevant in a system of merit rating for the purpose of establishing equitable merit rates.” (Insurance Law § 2343 [d].)
The Superintendent was also directed to consider whether *593 "premium rates unfairly burden physicians who are initiating their practice, those who are transitioning to retirement or those who practice part-time or hold academic positions” (Insurance Law § 2343 [d]).
On December 30, 1985, the Superintendent promulgated a proposed regulation establishing a merit rating plan which was challenged by petitioners. The application to annul the regulation was denied by court order without prejudice to renewal upon promulgation of a final regulation.
The final regulation, regulation No. 124 (11 NYCRR 152), establishing a merit rating plan was promulgated by the Superintendent, pursuant to his authority under section 2343 of the Insurance Law, on June 12, 1986. It is this regulation that petitioners challenge here.
On a motion to dismiss for failure to state a cause of action (CPLR 3211 [a] [7]; 7804 [f]), the court looks to the substance of the pleading to determine whether the pleader has a cause of action, not whether it has properly stated one (Rovello v Orofino Realty Co., 40 NY2d 633).
Petitioners’ pleadings are inartfully drafted. Nevertheless, as best as this court can determine petitioners’ theories of recovery appear to seek to declare regulation No. 124 unconstitutional on its face on the grounds that it is confiscatory, violates due process and constitutes a denial of equal protection of the laws. In addition, petitioners claim that the regulation is arbitrary and capricious and fails to conform to section 2343 of the Insurance Law on the ground that it unfairly discriminates. Because the present article 78 proceeding is an inappropriate vehicle in which to advance these claims, the proceeding is converted to an action for a declaratory judgment (see, CPLR 103 [c]; Matter of Gold v Lomenzo, 29 NY2d 468, 476, n 4; Matter of Montgomery Ward & Co. v New York State Dept. of Motor Vehicles, 90 AD2d 643, 644), and the petition deemed the complaint. Petitioners shall hereinafter be referred to as plaintiffs.
With respect to the branch of the cross motion to dismiss the complaint on the ground that the action is premature, the Superintendent argues that regulation No. 124 is not yet fully operational, and in any event, it provides for periodic adjustment of the method for calculating surcharges as more experience data becomes available (11 NYCRR 152.3 [c]). Regulation No. 124, however, has been in effect for over one year, during which time insurers were required to adopt, and then submit *594 to the Superintendent for approval, a merit rating plan in accordance with its provisions (11 NYCRR 152.5); or alternatively, under unique circumstances to adopt and submit a plan at variance with its provisions (11 NYCRR 152.4). Insureds presumably have been charged with premium surcharges based upon the approved plans, or face the prospect of that happening soon (cf., American Ins. Assn. v Chu, 64 NY2d 379, 385 [claim dismissed because the issue to be determined was contingent upon a future event, beyond the control of the parties, which might never occur]). Moreover, plaintiffs’ attacks on the regulation are directed at its face, not as applied to individual physicians. That the regulation permits periodic adjustment of those factors specified for assigning points to generate surcharges (11 NYCRR 152.3 [c]), does not render premature or moot challenges to the methodology in its present formulation.
With respect to that branch of the cross motion to dismiss the complaint for failure to state a cause of action, the Superintendent argues that the promulgation of regulation No. 124 is neither arbitrary, capricious, irrational, nor confiscatory.
Plaintiffs claim the regulation permits a confiscatory taking of property by establishing a period of review of chargeable losses which exceeds the limits of reasonable retroactivity. In addition, plaintiffs claim that the regulation arbitrarily and capriciously discriminates among doctors in terms of dollar amounts charged per premium surcharge because it fails to distinguish between the risks faced by physicians practicing different medical specialties.
The Superintendent of Insurance is vested with broad power to interpret, clarify, and implement legislative policy (see, Insurance Law § 301; Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444; Ostrer v Schenck, 41 NY2d 782). Implementation of legislative policy, via regulation, however, must be consistent with statutory and constitutional requirements. As a general rule, legislative and regulatory adjustments of the burdens and benefits of economic life are afforded great latitude, and will not be overturned as violative of due process and equal protection rights so long as the means utilized are rationally related to the legitimate State objective (see, e.g., Usery v Turner Elkhorn Min. Co., 428 US 1; Montgomery v Daniels, 38 NY2d 41).
The legislative purpose allegedly sought to be addressed by regulation No. 124 is set out in the regulation’s preamble:
*595 "(a) Section 2343 (d) of the Insurance Law requires that the Insurance Department promulgate a regulation establishing a Physicians and Surgeons Professional Liability Merit Rating Plan to take effect on January 1, 1986. A merit rating plan is a system of rules for imposing rate surcharges or credits, within the existing class and territory matrix, based upon an individual’s past history of claims or disciplinary actions. The plan is intended to produce a more accurate individual premium by using past claim history to predict the likelihood of future claims.
"(b) Some insurers currently have a formal merit rating plan, while others impose surcharges and credits on an ad hoc judgmental basis. This regulation establishes a uniform plan for use by all insurers, which supersedes all existing plans. The department believes it is in the best interests of insurers, physicians and the public to maintain stability in the rating system by requiring all insured physicians to be experience-rated under the same set of criteria. The plan, which applies to all claims-made and occurrence policies, is intended to be revenue-neutral: i.e., any additional funds generated by surcharges must be offset by a rate discount factor that is applied to the base rates: over the long term and for all insurers within the entire system.” (11 NYCRR 152.1.)
The question remains whether the plan established by the regulation for determining an individual physician’s or surgeon’s premium rates is reasonably related to the legislative purpose.
Although the regulation provides for the prospective assessment of premium surcharges based upon historical data, it functions retroactively in application by permitting a physician or doctor to be charged premium surcharges based upon points assigned to chargeable losses which occurred prior to the enactment of section 2343 of the Insurance Law and regulation No. 124. Under the regulation, an insurer assigns points to those claims for which payments were made under a doctor’s professional liability insurance police during the 10-year period prior to the latest effective date of the doctor’s policy, so long as no more than 10 years passed between the occurrence and settlement dates (11 NYCRR 152.3).
At first glance, the regulation appears to limit consideration of "ancient” claims. A second reading reveals, however, that the regulation allows an insurer to assign points to those claims which both accrued up to 20 years before the latest *596 effective date and were paid 10 years before the latest effective date. Such allowance raises at least an issue of whether the regulation comports with substantive due process, especially when consideration is given to the relatively short duration of a doctor’s career (see, Pension Benefit Guar. Corp. v Gray & Co., 467 US 717; Usery v Turner Elkhorn Min. Co., 428 US 1, supra).
The Superintendent offers an affidavit of the assistant chief actuary of the Department of Insurance, in which the procedures utilized to devise a merit rating plan are generally described. The affidavit, however, does not indicate a reason for the Superintendent’s selection of the seemingly long retroactive period for evaluating a physician’s or surgeon’s experience. Although actuarial considerations may well have played a part in the creation of the regulation, in view of the prejoinder status of the cross motions to dismiss and the present lack of explanation by the Superintendent or his agents with knowledge, it cannot be said that plaintiffs have failed to state a cause of action for an alleged confiscatory taking and violation of substantive due process.
Plaintiffs also allege the regulation unfairly, arbitrarily and capriciously discriminates among doctors similarly situated in violation of section 2343 of the Insurance Law, and apparently, in violation of the conditional guarantee of equal protection of the laws (US Const, 14th Amend, § 1). Of course, the issue of whether a regulation unfairly, arbitrarily or capriciously discriminates must ultimately be determined by applying a narrow standard of review. As is the case in relation to the due process claim, an economic classification which is made on other than suspect or invidious grounds, will be upheld if it is rationally related to a valid State goal (Western & S. Life Ins. Co. v Board of Equalization, 451 US 648, 657; Trump v Chu, 65 NY2d 20, 25). The statute involved herein, section 2343 of the Insurance Law, is not discriminatory under the regulation so long as it is rationally related to a valid State goal.
Regulation No. 124 gives the superficial appearance of treating doctors similarly situated in a like manner. For instance, under the regulation, two physicians with an equal number of assigned points may be assessed a 35% premium surcharge (see, 11 NYCRR 152.3 [c]). Nevertheless, the dollar amounts actually paid by each doctor as a premium surcharge will differ because the base premium, upon which the percentage is applied, differs. According to plaintiffs, this plan unfairly *597 discriminates against physicians and surgeons who practice those medical specialties, which are associated with higher base premiums. Allegedly, the regulation unfairly burdens certain doctors with a greater share of the total cost of medical malpractice insurance premiums than those doctors’ claims histories warrant.
The affidavit of the assistant chief actuary of the Department of Insurance does not address the reasoning behind the application of a percentage to the base amount when assessing a surcharge, but merely refers to general considerations when arriving at the methodology. In light of the apparent unequal treatment of doctors with similar experience records, the current lack of an articulated reason for the disparity and the prejoinder stage of these motions, it cannot be concluded that, as a matter of law, plaintiffs have failed to state a cause of action for alleged unfair, arbitrary and capricious discrimination under the regulation.
Accordingly, the petition is deemed a complaint and the proceeding is converted into an action. The cross motion to dismiss is denied. The Superintendent is directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry.