STATE OF NEBRASKA, APPELLANT, V. ROBERT SCHMAILZL,
APPELLEE.

502 N.W.2d 463

Filed July 9, 1993.    No. S-92-576.

C. Jo Petersen, Seward County Attorney, for appellant.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

SHANAHAN, J.

Authorized under Neb. Rev. Stat. § 29-2315.01 (Supp. 1991), the State appeals from the decision of the district court for Seward County which dismissed the amended information that charged Robert Schmailzl with making a terroristic threat to certain persons in violation of Neb. Rev. Stat. § 28-311.01(1)(a) and (c) (Reissue 1989), a Class IV felony. The amended information charged that Schmailzl did "threaten to commit [a] crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror." Pursuant to Neb. Rev. Stat. § 29-1808 (Reissue 1989), Schmailzl moved to quash the amended information, facially challenging the constitutionality of § 28-311.01(1) on the ground that the statute is vague and overbroad in that it fails to define what conduct constitutes a threat and allows a felony conviction for threatened conduct which, if the threat were carried out, would be only a misdemeanor.

Section 28-311.01 provides:

(1) A person commits terroristic threats if he or she threatens to commit any crime of violence:

(a) With the intent to terrorize another;

(b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or

(c) In reckless disregard of the risk of causing such terror or evacuation.

(2) Terroristic threats is a Class IV felony.

The district court concluded that § 28-311.01(1) "is vague and uncertain in that it fails to define as to what constitutes a threat" and "is overbroad in that it allows prosecution as a felony the threat to commit a misdemeanor crime of violence," infirmities which, in the district court's view, rendered the statute unconstitutional. Consequently, the district court quashed the amended information and dismissed the proceedings against Schmailzl.

On appeal, the State asserts that the district court erred in ruling that § 28-311.01 is unconstitutionally vague and overbroad.

## STANDARD OF REVIEW

"Alleged unconstitutionality of a statute presents a question of law, which must be determined by the Supreme Court independent from the conclusion reached by a trial court on the constitutional question." *State v. Crowdell*, 234 Neb. 469, 471, 451 N.W.2d 695, 697 (1990). Accord *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989).

"Statutes are presumed to be constitutional, and unconstitutionality must be clearly established." *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 374-75, 348 N.W.2d 879, 881 (1984). See, also, *State v. Crowdell, supra*; *State v. LaChapelle*, 234 Neb. 458, 451 N.W.2d 689 (1990); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). "One claiming that a statute is unconstitutional has the burden to show that the questioned statute is unconstitutional." *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. at 265, 445 N.W.2d at 288. Accord, *State v. Crowdell, supra*; *State v. LaChapelle, supra*.

## VAGUENESS

"[D]ue process requires that a penal statute supply adequate and fair notice of the conduct prohibited and also supply an explicit legislative standard defining the proscribed conduct, to prevent arbitrary and discriminatory enforcement at the discretion of law enforcement officials." *State v. Monastero*, 228 Neb. 818, 833, 424 N.W.2d 837, 847 (1988). Accord *State v. Crowdell, supra*. Although "[s]tatutory notice governing behavior ' "must be unequivocal [such] requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." ' " *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. at 375, 348 N.W.2d at 882 (quoting *Gold v. Lomenzo*, 29 N.Y.2d 468, 280 N.E.2d 640, 329 N.Y.S.2d 805 (1972)).

"The test for determining whether a statute is vague is whether it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . . . A statute will not be deemed vague if it

uses ordinary terms which find adequate interpretation in common usage and understanding. . . . In determining whether a statute is vague and therefore does not give a defendant adequate notice that his conduct is proscribed, the statute must be examined in light of the conduct with which the defendant is charged. . . .

". . . The prohibition against vagueness does not invalidate a statute simply because it could have been drafted with greater precision. The test is whether the defendant could reasonably understand that his conduct was proscribed by the statute."

*State v. Sailors*, 217 Neb. 693, 695, 352 N.W.2d 860, 862 (1984) (quoting *State v. Sprague*, 213 Neb. 581, 330 N.W.2d 739 (1983)).

In *State v. Hamilton*, 215 Neb. 694, 340 N.W.2d 397 (1983), we held that Neb. Rev. Stat. § 28-311 (Reissue 1979), the former terroristic threats statute, was unconstitutionally vague and uncertain in part because that statute failed to define with sufficient specificity the nature of the threat which constituted proscribed conduct. However, in *Hamilton*, we noted that the terroristic threats statute significantly departed from § 211.3 of the Model Penal Code:

The language of the Model Penal Code is certainly much clearer than that adopted by the Nebraska Legislature. An actor violates the Model Penal Code when he or she threatens to commit any crime of violence, with the intent to terrorize another, regardless of what the outcome of the act will be or of how the victim receives the threat. The Model Penal Code seems to be fairly definite, and not speculative as is the statute in question.

215 Neb. at 698-99, 340 N.W.2d at 399-400.

Section 28-311.01, the current terroristic threats statute enacted in 1986, is a nearly verbatim version of § 211.3 of the Model Penal Code. Subsequent to enactment of § 28-311.01 in 1986, we commented in *State v. Willett*, 233 Neb. 243, 246, 444 N.W.2d 672, 674-75 (1989), that the language of § 28-311.01(1)(a) was "unequivocal" and that "when a person threatens to commit a crime of violence and has the intent to terrorize another as the result of the threat, he or she violates

§ 28-311.01(1)(a)." However, as Schmailzl correctly points out, in *State v. Bourke*, 237 Neb. 121, 124, 464 N.W.2d 805, 807 (1991), this court stated that "[t]he current law [§ 28-311.01 (Reissue 1989)] provides no additional guidance as to what constitutes a threat." In *Bourke*, this court addressed only the constitutionality of § 28-311.01(1)(c), a threat to commit a crime of violence in " 'reckless disregard of the risk of causing such terror or evacuation' " of a building, place of assembly, or facility of public transportation. 237 Neb. at 123, 464 N.W.2d at 807. *Bourke* did not address the constitutionality of § 28-311.01(1)(a), a threat to commit any crime of violence with intent to terrorize another.

Several other state courts have held that the words "threat" or "threaten," when used in statutes similar to § 28-311.01(1), are neither vague nor uncertain. For example, in *Lanthrip v. State*, 235 Ga. 10, 11, 218 S.E.2d 771, 773 (1975), the Supreme Court of Georgia held that

> [t]he unavoidable message of the express language contained in the statute is that one may not communicate to another person a threat to commit a crime of violence, for the purpose of terrorizing that person, without violating the statute. There are no hidden pitfalls or disguised traps into which the unwary may fall and commit the crime. The statute can be read and understood by a person of ordinary intelligence seeking to avoid its violation.

See, also, *People v. Hines*, 780 P.2d 556, 559 (Colo. 1989) ("[a] threat is a statement of purpose or intent to cause injury or harm to the person, property, or rights of another, by the commission of an unlawful act"); *State v. Porter*, 384 A.2d 429, 434 (Me. 1978) ("[a] communication is a threat if it carries the promise of evil under such circumstances that a reasonable person receiving the communication would believe that such was to ensue at the hands of the communicator, or his allies"); *State v. Gunzelman*, 210 Kan. 481, 486, 502 P.2d 705, 710 (1972) ("[t]he word 'threat' . . . means a communicated intent to inflict physical or other harm on any person or on property"); *Stein v. Commonwealth*, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991) (the word "threat" is an "ordinary,

everyday [word]" whose meaning is plain to a "person of normal intelligence and education"); *United States v. Baish*, 460 A.2d 38, 42 (D.C. App. 1983) ("a person 'threatens' when she utters words, which are intended to convey her desire to inflict physical or other harm on any person or on property, and these words are communicated to someone").

Apart from definitions of "threat" or "threaten" used in judicial opinions, *threat* means

> an indication of something impending and usu. undesirable or unpleasant . . . an expression of an intention to inflict evil, injury, or damage on another . . . expression of an intention to inflict loss or harm on another by illegal means and esp. by means involving coercion or duress of the person threatened . . . something that by its very nature or relation to another threatens the welfare of the latter . . . .

Webster's Third New International Dictionary, Unabridged 2382 (1981). Correspondingly, *threaten* means "to utter threats against : promise punishment, reprisal, or other distress to . . . to promise as a threat . . . to hang over as a threat : menace . . . to announce as intended or possible . . . ." *Id*.

We conclude that the words "threats" and "threatens" are terms of common usage and understanding which supply adequate and fair notice of the conduct prohibited by § 28-311.01(1). Therefore, we hold that § 28-311.01(1), which provides that any person who "threatens to commit any crime of violence," is not unconstitutionally vague.

## OVERBREADTH

Schmailzl contends that § 28-311.01(1) is unconstitutional as a result of the statute's "overbreadth, in that it fails to limit the 'crime of violence' to felony crimes and exposes an accused who may only threaten to commit a misdemeanor crime of violence to felony punishment, punishment more severe than had the accused actually committed the misdemeanor crime of violence." Brief for appellee at 7. As an illustration of the preceding proposition, Schmailzl points out that a terroristic threat to commit a crime of violence is punishable as a Class IV felony, but if the threatened crime in the terroristic threat is an

assault in the third degree, that is, intentionally causing bodily injury to another or threatening another in a menacing manner, commission of the threatened assault would be punishable as a Class I misdemeanor. See Neb. Rev. Stat. § 28-310 (Reissue 1989).

However, Schmailzl misperceives the doctrine of overbreadth, which pertains to a statute that is designed to burden, punish, or prohibit an activity that is not constitutionally protected, but which includes within its scope activities that are protected by the First Amendment to the U.S. Constitution. In *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800-01, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984), the U.S. Supreme Court characterized overbreadth as the situation when " 'a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, [and] the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation.' " (Quoting *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982)). See, also, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975); John E. Nowak, Ronald D. Rotunda & J. Nelson Young, Constitutional Law ch. 18, § III at 868 (2d ed. 1983). As noted in *State v. Frey*, 218 Neb. 558, 561, 357 N.W.2d 216, 218-19 (1984):

> [A]n enactment which is clear and precise, and therefore not vague, may nonetheless fail to pass constitutional muster by virtue of being overbroad in the sense that it prohibits the exercise of constitutionally protected conduct, such as the exercise of first amendment rights....
>
> . . . [I]n a facial challenge to the overbreadth and vagueness of a law . . . our first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail.

Therefore, § 28-311.01(1), as a part of the terroristic threats statute, is overbroad only if the statute unconstitutionally burdens, punishes, or prohibits the freedom of speech guaranteed by the First Amendment to the U.S. Constitution

and by article I, § 5, of the Nebraska Constitution.

Section 28-311.01(1)(a) prohibits a threat to commit a violent crime when the threat is made with the intention of causing a state of intense fear in another. Content of speech is implicated in § 28-311.01(1)(a) only insofar as content determines whether the communication or expression is a threat to commit a crime of violence.

> [I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell* v. *Connecticut*, 310 U. S. 296, 309-310 [, 60 S. Ct. 900, 84 L. Ed. 1213 (1940)].

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S. Ct. 766, 86 L. Ed. 1031 (1942).

Thus, "not all speech is protected by the first amendment." *State v. Monastero*, 228 Neb. 818, 825, 424 N.W.2d 837, 843 (1988). See, also, *Konigsberg v. State Bar*, 366 U.S. 36, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961). "[S]peech protected by the first amendment to the U.S. Constitution includes the free expression or exchange of ideas, the communication of information or opinions, and the dissemination and propagation of views and ideas, as well as the advocacy of causes." *State v. Monastero*, 228 Neb. at 825, 424 N.W.2d at 843. Further, in recognition that freedom of speech is not absolute, the U.S. Supreme Court stated in *City Council v.*

*Taxpayers for Vincent, supra*: "It has been clear since this Court's earliest decisions concerning the freedom of speech that the state may sometimes curtail speech when necessary to advance a significant and legitimate state interest." 466 U.S. at 804.

"What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). Therefore, by § 28-311.01(1)(a), the state regulates content of speech insofar as the state seeks to prevent injury through production of anxiety in another. The state has a substantial governmental interest in protecting persons against harm and may achieve that legitimate objective by preventing or punishing a terroristic threat, even if speech is used to communicate or express the threat. Because § 28-311.01(1)(a) is narrowly tailored to achieve a substantial and legitimate state interest, the statute is not overbroad.

Although Schmailzl questions the "fairness" in the Nebraska Legislature's making a terroristic threat a felony, while the threatened crime of violence, if committed, would be a misdemeanor, classification of criminal conduct as a felony or misdemeanor is, generally, within the Legislature's discretion. A legislature has discretion in determining what measures are reasonably necessary to protect public health, safety, and welfare, and a court, in reviewing a legislative act, should not substitute its own judgment for that of the legislature merely because the court may believe that the legislature acted unwisely or improvidently. See, *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989); *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985); *Spence v. Terry*, 215 Neb. 810, 340 N.W.2d 884 (1983).

## CONCLUSION

For the reasons set forth above, we hold that the terroristic threats statute, § 28-311.01(1)(a) and (2), is constitutional. Consequently, we sustain the State's exception to the district court's judgment that § 28-311.01(1)(a) and (2) are unconstitutional.

EXCEPTION SUSTAINED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.