Filed 12/3/13  P. v. Matute CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057098 |
| v. | (Super.Ct.No. RIF1103288) |
| DARWIN CASTRO MATUTE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard Todd Fields, Judge.  Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

This is an appeal by defendant and appellant, Darwin Castro Matute (defendant), from the judgment entered after a jury found him guilty, among other things, of false imprisonment (Pen. Code, § 236), as a lesser included offense to the charged crime of kidnapping to commit rape (Pen. Code, § 209, subd. (b)(1)), forcible rape (Pen. Code, § 261, subd. (a)(2)), attempted forcible sodomy (Pen. Code, §§ 664, 286, subd. (c)(2)), assault with a deadly weapon (Pen. Code § 245, subd. (a)(1)), and an attempt to make criminal threats (Pen. Code, §§ 664, 422). The trial court sentenced defendant to serve a term of 15 years to life in state prison on the rape conviction, preceded by determinate terms of three years on his conviction for attempted forcible sodomy, and eight months on his conviction for false imprisonment.

Defendant raises five claims of error in this appeal, the first of which challenges the correctness of CALCRIM No. 852, which instructs the jury on how to consider evidence of uncharged acts of domestic violence. Next, defendant challenges the trial court's ruling that defendant's prior acts of domestic violence were admissible under Evidence Code section 1109. Defendant also challenges the constitutionality of Evidence Code section 1109 and Penal Code section 422, the criminal threats statute. Defendant's final claim is that CALCRIM No. 1300, which instructs the jury on the crime of making criminal threats, is incorrect. We conclude defendant's claims are meritless. Therefore, we will affirm.

## FACTS

The facts that give rise to the charges in this case are not in dispute. Defendant and Jane Doe had dated for about five years prior to the date of defendant's trial. During their relationship, defendant physically abused Jane Doe by pushing her, pulling her around by her hair, and throwing her to the ground. Defendant frequently slapped Jane Doe, with sufficient force to cause her mouth to bleed. Defendant also hit her with a belt, and once hit her on the thighs with the buckle end of the belt. Defendant also took a swing at Jane Doe while holding a screwdriver in his fist. Once, when she tried to call the police, defendant grabbed the phone from Jane Doe and told her he would kill whoever came around.

Jane Doe's relationship with defendant ended when she went to his house, after he asked her to come over, and found him in bed having sex with a woman. Jane Doe assumed defendant had wanted her to see him in bed with another woman, that their relationship was over, and he would leave her alone.

Defendant did not leave Jane Doe alone; instead he called her every day and threatened to hurt her if she refused to go back to him. He also threatened to kill her if he ever saw her with another man. About three weeks after she ended her relationship with defendant, he called and asked Jane Doe to give him a ride home from a club. Because he sounded scared, she was worried about him, and agreed to pick up defendant. Defendant seemed angry and told Jane Doe not to talk to him when he got in her car. When they arrived at his house, Jane Doe declined defendant's request that they talk about their relationship. Defendant grabbed her by the hair and forced Jane Doe to drive

3

her car up his driveway. Defendant then pulled Jane Doe by her hair from the car and into his room. Defendant threw Jane Doe on his bed. He grabbed a screwdriver and began to swing it at her. When she refused to have sex with him, defendant tore Jane Doe's clothing off her body. Defendant pulled out a knife which he held at her neck while he got on top of Jane Doe. Defendant bit both of her breasts, and also bit her in several places on her back. Defendant penetrated her vagina with his penis.

Jane Doe eventually was able to push defendant away and leave. All the while defendant called Jane Doe insulting names and laughed about what he had just done to her. Jane Doe went home and to bed. The next morning when she awoke defendant was in her bedroom. He accused her of taking his wallet and cell phone. Jane Doe denied taking anything from defendant and found his wallet in her car on the passenger side. Defendant forced Jane Doe to buy him a new cell phone by telling her he would not leave her house until she bought him a new phone. Defendant used that phone to call Jane Doe repeatedly and threatened to kill her.

Several days after defendant sexually assaulted her, Jane Doe called the police and reported defendant. She did so because she was in pain and because she was afraid of defendant. Additional facts pertinent to the issues defendant raises on appeal will be recounted below.

## DISCUSSION

## 1.

### CALCRIM No. 852

Defendant contends that CALCRIM No. 852, which instructs the jury on the various purposes for which the jury may consider evidence of prior acts of domestic violence, interferes with the presumption of innocence and the burden of proving defendant's guilt beyond a reasonable doubt. We disagree. More importantly so does our state Supreme Court. In *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1016, as defendant acknowledges, our high court addressed and rejected the precise claims defendant raises in this appeal. We are bound by decisions of our state Supreme Court, as defendant also acknowledges. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456.) Therefore, we must reject defendant's first claim of error, which he concedes he has asserted primarily to preserve the issue for possible federal review.

## 2.

### ADMISSIBILITY OF PRIOR ACTS OF DOMESTIC VIOLENCE

Defendant contends we must reverse the judgment because the trial court committed error by allowing the prosecutor to introduce evidence of prior acts of domestic violence defendant committed against Jane Doe. Defendant acknowledges such evidence is admissible under Evidence Code section 1109, subject to the trial court's exercise of discretion under Evidence Code section 352. Defendant contends the trial court in this case did not properly conduct the Evidence Code section 352 analysis. We disagree.

5

The prosecutor informed the trial court, in a pretrial motion, of his intent to introduce evidence of other acts of domestic violence defendant committed against the victim. The prosecutor made an offer of proof the victim would testify that over the course of their relationship, defendant hit her with a belt, attempted to hit her with bottles, pulled her by her hair, threatened to cut her hair, and kicked, slapped and pushed her. Defendant objected to the admissibility of the evidence under Evidence Code section 352. The trial court ruled the probative value of the evidence substantially outweighed its potential for undue prejudice because the uncharged acts of domestic violence were minor when compared to the charged crimes, that the evidence would not create confusion for the jury, nor would introduction of the evidence be unduly time consuming.

Under Evidence Code section 1109, subdivision (a)(1), "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." We review a trial court's ruling under Evidence Code sections 1109 and 352 for abuse of discretion. (*People v. Branch* (2001) 91 Cal.App.4th 274, 281-282.)

Defendant contends the trial court abused its discretion by admitting the evidence recounted above because it was too generic and showed only that defendant became violent when he was angry, and in the absence of specific details, the other acts of domestic violence were not connected to the charged crimes. Defendant contends it also was "highly likely" the jurors would find defendant guilty of the charged crimes in order to punish him for his other uncharged acts of domestic violence.

6

Defendant's contrary claims notwithstanding, the trial court did not abuse its discretion. Because the uncharged acts of domestic violence were significantly less serious than the charged acts, the jury was less likely to punish defendant in this case based on his prior conduct. In short, the evidence regarding other acts of domestic violence committed by defendant against Jane Doe was not unduly inflammatory and therefore we must reject defendant's claim of error. The trial court did not abuse its discretion in ruling the evidence admissible under Evidence Code sections 1109 and 352.

**3.**

**CONSTITUTIONALITY OF EVIDENCE CODE SECTION 1109**

Defendant challenges the constitutionality of Evidence Code section 1109 on due process and equal protection grounds. He acknowledges the Supreme Court addressed and rejected his due process claim in *People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*), albeit in the context of Evidence Code section 1108. Defendant urges us to reconsider *Falsetta* in light of *Garceau v. Woodford* (9th Cir. 2001) 275 F.3d 769. We are not inclined to do so, and in any event, we are precluded from reconsidering an issue resolved by our state Supreme Court; we are bound by it. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d 450, 456.)

Defendant's equal protection argument is addressed and resolved in *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310-1313 (*Jennings*), as defendant acknowledges, although he claims that court incorrectly analyzed the issue because it applied the rational basis standard. Defendant contends the correct standard is strict scrutiny. We disagree.

As explained in *Jennings*, when a statute creates two classifications of accused or convicted defendants but does not infringe upon the right to a fair trial, due process or proof beyond a reasonable doubt, then an equal protection challenge is subject to a rational basis analysis. (*Jennings*, *supra*, 81 Cal.App.4th at pp. 1310-1311.) The court relied on *Falsetta*, *People v. Brown* (2000) 77 Cal.App.4th 1020 (Fourth Dist., Div. Two), *People v. Hoover* (2000) 77 Cal.App.4th 1334, and *People v. Johnson* (2000) 77 Cal.App.4th 410, to conclude Evidence Code section 1109 does not implicate the noted constitutional rights. (*Jennings*, at p. 1312.) "On its face, section 1109 treats all defendants charged with domestic violence equally; the only distinction it makes is between such domestic violence defendants and defendants accused of other crimes. Neither the federal nor the state constitution bars a legislature from distinguishing among criminal offenses in establishing rules for the admission of evidence; nor does equal protection require that acts or things which are different in fact be treated in law as though they were the same. The equal protection clause simply requires that, 'in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made."' [Citation.] Absolute equality is not required; the Constitution permits lines to be drawn. [Citation.] The distinction drawn by section 1109 between domestic violence offenses and all other offenses is clearly relevant to the evidentiary purposes for which this distinction is made." (*Id*. at p. 1311, citing *Estelle v. Dorrough* (1975) 420 U.S. 534, 538-539 and *Douglas v. California* (1963) 372 U.S. 353, 357.)

8

We will follow *Jennings* here and in doing so conclude Evidence Code section 1109 does not violate the due process or equal protection clauses of either the state or federal constitutions, defendant's contrary claims notwithstanding.

**4.**

**CONSTITUTIONALITY OF PENAL CODE SECTION 422**

Defendant contends Penal Code section 422 is unconstitutionally vague because it defines a criminal threat as one that threatens commission of a crime "which will result in death or great bodily injury to another person." Defendant argues the quoted language "is unconstitutionally vague because it calls upon law enforcement to evaluate the nature of threats and to determine, on a case by case basis, and under a myriad of circumstances, whether a threat is of the type which will result in great bodily injury or death."

This issue was addressed and rejected in *People v. Maciel* (2003) 113 Cal.App.4th 679, 685 (*Maciel*). The *Maciel* court held that the quoted phrase must be construed in context. "Penal Code section 422 does not criminalize all threats of crimes that will result in death or great bodily injury, leaving to law enforcement to determine those threats that will result in arrest. Instead, the statute criminalizes only those threats that are 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes [*sic*] that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety.' This language means that not all threats of crimes that will result in great bodily injury are criminalized, but only serious threats, intentionally made, of crimes likely to result in immediate great bodily injury.

9

Moreover, the statute also includes a specific intent element: 'with the specific intent that the statement . . . is to be taken as a threat.' A statute that criminalizes threats of crimes that will result in [death or] great bodily injury with the intent to place the victim in sustained fear for personal safety or the safety of immediate family members adequately advises an individual and law enforcement of the conduct prohibited by the statute. One who willfully threatens violence against another, intending that the victim take the threat seriously and be fearful, cannot reasonably claim to be unaware that the conduct was prohibited." (*Id.* at p. 685.)

Defendant attempts to distinguish *Maciel* by claiming it is based in part on a Nebraska case (*State v. Schmailzl* (1993) 243 Neb. 734) that involves an amended version of a Nebraska statute but the original version includes language "which is so similar to that found in [Penal Code] section 422." Defendant's statement is wrong. The *Maciel* court's discussion of Nebraska statutes and case law consists of the following statement:

"Defendant relies on a case in which the Nebraska Supreme Court voided Nebraska's criminal threats statute as unconstitutionally vague. (*State v. Hamilton* (1983) 215 Neb. 694 [340 N.W.2d 397].) The Nebraska Supreme Court was to some extent concerned with language similar to the language challenged in this case. (*Id.* at pp. 398–399.) However, the challenged Nebraska statute did not include language that the victim must take the threat seriously or any intent element. Subsequently, the Nebraska legislature adopted a new criminal threats statute modeled on the Model Penal Code and including a specific intent element. The Nebraska Supreme Court concluded that this revised statute did not suffer from unconstitutional vagueness. (*State v.*

10

*Schmailzl* (1993) 243 Neb. 734 [502 N.W.2d 463, 465-467].)" (*Maciel*, *supra*, 113 Cal.App.4th at p. 686, fn. 3.)

Defendant's argument in this case is identical to the argument addressed and rejected in *Maciel*. Based on *Maciel* we reject defendant's argument in this case that Penal Code section 422 is unconstitutionally vague.

**5.**

**FAILURE TO INSTRUCT ON ELEMENTS OF THE THREATENED CRIME**

As his final claim of error, defendant contends the trial court's instruction on the crime of making criminal threats in violation of Penal Code section 422 was incomplete and the error requires reversal because the instruction (CALCRIM No. 1300) did not include the elements of the crime or crimes defendant threatened to commit. Again we disagree.

Defendant's claim was addressed and rejected in *People v. Butler* (2000) 85 Cal.App.4th 745, 755. Although defendant purports to distinguish *Butler*, his effort is not persuasive. In rejecting the defendant's claim that the trial court should have instructed on the elements of the crime threatened, the *Butler* court observed that the statutory language requiring the threatened act be a crime or illegal act was included "in order to take it out of First Amendment protection. [Citation.]" (*People v. Butler*, at p. 757.) Simply put, the trial court, in instructing the jury on the elements of the crime set out in Penal Code section 422, was not required to instruct on the elements of the crime defendant threatened to commit. Therefore, we reject defendant's final claim of error in this appeal.

11

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                                                Acting P. J.

We concur:


RICHLI _____
                        J.


MILLER _____
                        J.

12